## ADDENDUM

28 U.S.C. § 1331

F.R.C.P. 56(c)

10th Cir. R. 28.2(c)(4)

<u>Boyd v. Bell</u>, 2002 WL 32349381 (E.D. Va. 2002)

<u>Ervin v. Mangum,</u>
127 F.3d 1099, 1997 WL 664606 (4th Cir. W. Va. 1997)

<u>Freeman v. Sheahan</u>, 1996 WL 18883 (N.D. Ill. 1996)

<u>Jones v. Van Fleit</u>, 49 Fed. Appx. 626 (2002)

<u>Jones v. Williams</u>, 2001 WL 283101 (N.D. Tex. 2001)

Westlaw.

28 U.S.C.A. § 1331

**C**

**Effective: [See Text Amendments]**

UNITED STATES CODE ANNOTATED
TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV--JURISDICTION AND VENUE
**CHAPTER 85--DISTRICT COURTS;  JURISDICTION**
➡**§ 1331. Federal question**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Current through P.L. 109-217 (excluding P.L. 109-171, 109-177, 109-178) approved 04-13-06

Copr. © 2006 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Federal Rules of Civil Procedure Rule 56

**C**
UNITED STATES CODE ANNOTATED
FEDERAL RULES OF CIVIL PROCEDURE **FOR THE UNITED STATES DISTRICT COURTS**
VII. JUDGMENT
➡**Rule 56. Summary Judgment**

**(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

**(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

**(c) Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**(g) Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Federal Rules of Civil Procedure Rule 56

Amendments received to 2-20-06

Copr. © 2006 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

Westlaw.

▶

**This document has been updated.  Use <u>KEYCITE</u>.**

United States Code Annotated <u>Currentness</u>
  United States Court of Appeals for the Tenth Circuit
    &#x1F5D2; <u>Title VII.</u>  General Provisions

  ➡ **Rule 28.2. Additional requirements**

 **(A) Appellant's Brief.**  In addition to all other requirements of the Federal Rules of Appellate Procedure and these rules, the appellant's brief must include the following (even though they are also included in the appendix):

  **(1)** copies of all pertinent written findings, conclusions, opinions, or orders of a district judge, bankruptcy judge, or magistrate judge (if the district court adopts a magistrate's report and recommendation, that report must also be included);

  **(2)** if any judicial pronouncement listed in (1) is oral, a copy of the transcript pages;

  **(3)** in social security cases, copies of the decisions of the administrative law judge and the appeals council; and

  **(4)** in immigration cases, a copy of the transcript from the Immigration Judge's oral ruling, plus copies of the written rulings of the Immigration Judge and the Board of Immigration Appeals.

**(B) Appellee's Brief.**  If the appellant's brief fails to include all the rulings required by (A), the appellee's brief must include them.

**(C) All Principal Briefs.**

  **(1) Statement of Related Cases.**  At the end of the table of cases, the first brief filed by each party must list all prior or related appeals, with appropriate citations, or a statement that there are no prior or related appeals.

  **(2) Record References.**  For each issue raised on appeal, all briefs must cite the precise reference in the record where the issue was raised and ruled on.

  **(3) Particular Record References.**  Briefs must cite the precise reference in the record where a required objection was made and ruled on, if the appeal is based on:

    **(a)** a failure to admit or exclude evidence;

    **(b)** the giving of or refusal to give a particular jury instruction;  or

    **(c)** any other act or ruling for which a party must record an objection to preserve the right to appeal.

  **(4) Oral Argument Statement.**  The front cover of each party's first brief must state whether oral argument is requested.  If argument is requested, a statement of the reasons why argument is necessary must follow the brief's conclusion.

  **(5) Name of Court and Judge.**  The front cover of each brief must contain the name of the court and the judge whose judgment is being appealed.

CREDIT(S)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CTA10 Rule 28.2
 U.S.Ct. of App. 10th Cir. Rule 28.2, 28 U.S.C.A.

Eff. Jan. 1, 1999;  amended eff. Jan. 1, 2006.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32349381 (E.D.Va.)
(Cite as: 2002 WL 32349381 (E.D.Va.))

**H**

**Page  1**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Virginia.
**Brian A. BOYD, Plaintiff,**
v.
**J. BELL, et al., Defendants.**
**No. COV.A. 01-CV-1745.**

Dec. 2, 2002.

Brian Anthony Boyd, pro se, Jonesville, VA, for
plaintiff.

*MEMORANDUM OPINION AND ORDER*

LEE, J.

*1 By the Court's Order dated July 19, 2002, in
this action filed under 42 U.S.C. § 1983, plaintiff
was directed to particularize and amend his
complaint. On October 2, 2002, plaintiff filed his
amended complaint. Upon review of the amended
complaint, plaintiff has failed to state a claim upon
which relief can be granted. Accordingly, this
complaint must be dismissed pursuant to 28 U.S.C.
§ 1915A(b)(1). [FN1]

FN1. 28 U.S.C. § 1915A provides
(a) Screening.--The court shall review, before
docketing, if feasible, or, in any event, as soon as
practicable after docketing, a complaint in a civil
action in which a prisoner seeks redress from a
governmental entity of officer or employee of a
governmental entity.
(b) Grounds for dismissal.--On review, the court
shall identify cognizable claims or dismiss the
complaint, or any portion of the complaint, if the
complaint--
(1) is frivolous, malicious or fails to state a claim
upon which relief can be granted; or
(2) seeks monetary relief from a defendant who is
immune from such relief.

Plaintiff states that on November 9, 2000, he and
another inmate at Sussex II State Prison ("Sussex
II") began fighting, eventually wrestling each other
to the ground. In order to stop the fistfight,
defendant Correctional Officer (C/O) J. Bell fired a
rubber-pellet shotgun at the inmates, hitting plaintiff
in the forearm, right shoulder, and under his right

eye. Plaintiff was taken to the Sussex II medical
unit, where defendant John Doe cleaned and
bandaged plaintiff's wounds. Plaintiff has since been
seen by ophthalmologists at Medical College of
Virginia for the blurred vision in his right eye.
Furthermore, plaintiff, complaining of pain, was
seen again by defendant John Doe at Sussex II.
Defendant John Doe gave plaintiff aspirin for his
pain and instructed plaintiff to exercise his right
shoulder. Plaintiff argues that the aspirin did not
alleviate his pain, and that he continues to suffer
headaches as well.

In reviewing a complaint pursuant to § 1915A, a
court should dismiss a prisoner complaint that is
frivolous, malicious or fails to state a claim upon
which relief can be granted. 28 U.S.C. §
1915A(b)(1). Whether a complaint states a claim
upon which relief can be granted is determined by
"the familiar standard for a motion to dismiss under
Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9
F.Supp.2d 641, 642 (E.D.Va.1998). Thus, the
alleged facts are presumed true, and the complaint
should be dismissed only when "it is clear that no
relief could be granted under any set of facts that
could be proved consistent with the allegations."
*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104
S.Ct. 2229, 81 L.Ed.2d 59 (1984).

At the outset, the Court dismisses defendant Ronald
Angelone from this action. Because state officials
acting in their official capacities are not "persons"
under § 1983, they may not be named as defendants.
*See Will v. Mich. Dep't of State Police,* 491 U.S.
58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).
Hence, plaintiff's claim against defendant Angelone
must be dismissed from this action pursuant to §
1915A(b)(2).

Furthermore, plaintiff's amended complaint fails to
explain how plaintiff was deprived of his
constitutional rights by defendants C/O Banks, C/O
Kennon, Eddie L. Pearson, David Everette, or
Houston Shiflette. Thus, plaintiff's claim against
those named defendants must be dismissed from this
action pursuant to § 1915A(b)(1).

Moreover, it is clear that plaintiff has failed to state
a claim upon which relief may be granted with
respect to his claims of excessive use of force and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
(Cite as: 2002 WL 32349381, *1 (E.D.Va.))

inadequate medical treatment.

### A. Excessive Use of Force

*2 The Eighth Amendment, enforced against the states through the Fourteenth Amendment, provides inmates protection from the application of excessive force by correctional officers. *Whitley v.. Albers,* 475 U.S. 312, 318-19, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). To prove a claim of excessive force, the inmate must satisfy two requirements. *Stanley v. Hejirika,* 134 F.3d 629, 633-35 (4th Cir.1998). First, the inmate must establish that the force "inflicted unnecessary and wanton pain and suffering." *Id.* at 634 (quoting *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). Second, the inmate must show that the officer's actions, taken in context, were "objectively harmful enough to offend contemporary standards of decency." *Id.* (internal citations omitted).

### 1. The Injury Threshold

To bring a civil rights claim, a prisoner must show actual physical injury. 42 U.S.C. § 1997e(e). Although an injury need not be significant to violate the Eighth Amendment, something more than *de minimis* injury is required. *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ; *see also Norman v. Taylor,* 25 F.3d 1259 (4th Cir.1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by plaintiff is *de minimis* ).

In the instant case, two of plaintiff's injuries likely are *de minimus:* the pain in his shoulder and his headaches. *See, e.g., Taylor v. McDuffie,* 155 F.3d 479, 482 (4th Cir.1998) (abrasions on wrists and ankles, slight swelling in jaw area and tenderness in the rib area considered *de minimis* ); *Norman v. Taylor,* 25 F.3d 1259, 1261 (4th Cir.1994) (persistent pain in thumb considered *de minimis* ); *Marshall v. Odom,* 156 F.Supp.2d 525, 530 (D.Md.2001) (headache, abrasion, numbness and swelling considered *de minimis* ). However, the blurred vision plaintiff suffers in his right eye would seem to exceed the *de minimus* threshold, qualifying as a significant injury. Hence, the injury threshold of the excessive force test is satisfied, and the other requirements must be examined.

### 2. The Subjective Factor of Intent

Plaintiff's first task in proving a claim of excessive force is to establish that the force used inflicted unnecessary and wanton pain and suffering. *Stanley,* 134 F.3d at 634. Courts must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320-21 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973). Thus, the inmate must show "that the correctional officers acted with a sufficiently culpable state of mind." *Stanley,* 134 F.3d at 634. However, "not … every malevolent touch by a prison guard gives rise to a federal cause of action." *Riley v. Dorton,* 115 F.3d 1159, 1167 (4th Cir.1997).

In the instant case, plaintiff alleges that in the past, Bell had been verbally abusive toward him. While this allegation, which the Court presumes to be true, indicates a possibility that defendant Bell's actions were not wholly undertaken in good faith, his actions with respect to stopping the fight must further be examined in context.

### 3. The Objective Balancing Test

*3 Plaintiff's second task is to show that the officer's actions, taken in context, were "objectively harmful enough to offend contemporary standards of decency." *Stanley,* 134 F.3d at 634 (internal citations omitted). For this requirement, courts weigh "the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose." *Stanley,* 134 F.3d at 634; *see also Williams v. Benjamin,* 77 F.3d 756 (4th Cir.1996). Furthermore, correctional officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321-22 (quoting *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

In the instant case, plaintiff admits to engaging in a fistfight with another inmate. The inmates eventually wound up wrestling on the floor. In an effort to quell this fight and restore order, defendant C/O Bell fired rubber pellets only at the inmates involved in the fight. To be sure, plaintiff received

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



injuries from the rubber pellets. However, except for the blurred vision, plaintiff's injuries were *de minimus*. Furthermore, by plaintiff's own admission, he was moving around at the time Bell fired the pellets, making it more difficult for Bell to avoid hitting plaintiff in the head. This Court finds that it was entirely reasonable, in the performance of his duties as a correctional officer, for defendant C/O Bell to fire rubber pellets and the other inmate in order to prevent any further disturbance or more serious injury.

Accordingly, plaintiff fails to allege a claim for excessive use of force, and this claim must therefore be dismissed.

### B. Inadequate Medical Treatment

It is well settled that prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate. *Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, in order to establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106; *see also Staples v. Virginia Department of Corrections,* 904 F.Supp. 487, 492 (E.D.Va.1995).

Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must demonstrate a sufficiently serious medical need. *See, e.g., Cooper v. Dyke,* 814 F.2d 941, 945 (4th Cir.1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); *Loe v. Armistead,* 582 F.2d 1291, 1296 (4th Cir.1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must show deliberate indifference to that serious medical need.

*4 For this second prong, an assertion of mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. *Daniels v. Williams,* 474 U.S. 327, 328 (1986); *Estelle,* 429 U.S. at 105-06; *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990). Nor does a prisoner's disagreement with medical personnel over the course of his treatment make out a cause of action. *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir.1985); *Russell*

*v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975) (per curiam); *Harris v. Murray,* 761 F.Supp. 409, 414 (E.D.Va.1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier,* 896 F.2d at 851. However, the prisoner must demonstrate that defendant's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.*

In the instant case, plaintiff has alleged a sufficiently serious medical need: as the result of being hit in the face with a rubber pellet, he suffers from blurred vision in his right eye. However, he has not alleged that any defendant was deliberately indifferent to that medical need. Rather, he merely alleges that the various John and Jane Does who treated him did not entirely alleviate his pain, even though they saw to it that he was given aspirin. Even if the Court presumes that all factual allegations in the complaint are true, plaintiff's claims present at best a case of mere negligence by defendants John and Jane Does. Because such a claim is not viable under § 1915A(b)(1), this complaint must be dismissed.

Accordingly, it is hereby

ORDERED that this action is FILED solely for the administrative convenience of the Court; and it is further

ORDERED that this action is DISMISSED for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED this dismissal may affect plaintiff's ability to proceed *in forma pauperis* in future civil actions pursuant to 28 U.S.C. § 1915(g); [FN2] and it is further

FN2. 28 U.S.C. § 1915(g) provides:
In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent threat of danger of serious physical injury.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
**(Cite as: 2002 WL 32349381, \*4 (E.D.Va.))**

ORDERED that the Clerk note the disposition of this action for purposes of the Prison Litigation Reform Act.

Should plaintiff wish to appeal, written notice of appeal must be filed with the Clerk of this Court within thirty (30) days of the date of this Order. Thereafter, all motions and correspondence should be directed to the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit.

The Clerk is DIRECTED to send a copy of this Order to plaintiff and a courtesy copy of this Order to the Office of the Attorney General of Virginia.

Not Reported in F.Supp.2d, 2002 WL 32349381 (E.D.Va.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



127 F.3d 1099 (Table)                                                    **Page    1**
127 F.3d 1099 (Table), 1997 WL 664606 (4th Cir.(W.Va.))
**Unpublished Disposition**
**(Cite as: 127 F.3d 1099, 1997 WL 664606 (4th Cir.(W.Va.)))**
c

**Briefs and Other Related Documents**

NOTICE:        THIS    IS    AN    UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter.  Use FI CTA4 Rule 36 for
rules regarding the citation of unpublished
opinions.)

United States Court of Appeals, Fourth Circuit.
**Clyde A. ERVIN, Jr., Plaintiff-Appellee,**
v.
**R. Michael MANGUM, Sheriff of Raleigh
County, in his individual capacity; J.R.
Lilly, Jail Administrator, Raleigh County Jail, in
his individual capacity;
Thomas Scott, Correctional Officer, Raleigh
County Jail, in his individual
capacity, Defendants-Appellants.**
No. 93-7129.

Argued June 9, 1995
Decided October 27, 1997

Appeal from the United States District Court for the
Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, Senior District Judge. (CA-
92-864-5)

Jeffrey Kent Phillips, Steptoe & Johnson,
Charleston, West Virginia, for Appellants.  Ralph
C. Young, Hamilton, Burgess, Young, Tissue &
Pollard, Oak Hill, West Virginia, for Appellee.

Stephen P. McGowan, Steptoe & Johnson,
Charleston, West Virginia, for Appellants.

Clinton Gallaher, IV, Fayetteville, West Virginia,
for Appellee.

Before ERVIN and WILKINS, Circuit Judges, and
JACKSON, United States District Judge for the
Eastern District of Virginia, sitting by designation.

OPINION

ERVIN, Circuit Judge.

**\*\*1** Clyde Ervin, a former pretrial detainee at the
Raleigh County Jail in West Virginia, brought this
civil rights action under 42 U.S.C. § 1983 against
Michael Mangum, the former county sheriff, J.R.
Lilly, the jail administrator, and correctional officer
Thomas Scott.   While at the Raleigh County jail,
Ervin was assaulted by a fellow inmate and
sustained serious injuries to his eyes and face.
Ervin claims that the defendants failed to take
sufficient precautions to protect him from assault
and failed to provide adequate medical care once he
had been injured.     The defendants moved for
summary judgment based on qualified immunity on
both the failure to protect and failure to provide
medical assistance claims.

Although the district court failed to distinguish
sufficiently between the two claims, we find that
summary judgment should have been granted in
favor of all three defendants on Ervin's failure to
protect claim and in favor of defendants Mangum
and Lilly as to Ervin's claim of failure to provide
medical assistance. Defendants are entitled to
immunity from these claims because they committed
no violation of clearly established constitutional
law.    The district court correctly held, however,
that Scott is not entitled to summary judgment based
on qualified immunity on the claim of failure to
provide medical assistance. In light of our ruling
today, we remand this matter to the district court for
trial on the sole issue of whether Officer Scott was
deliberately indifferent in failing to provide Ervin
with adequate medical care.

I.

On September 10, 1990, Clyde Ervin was arrested
on marijuana charges and brought to the Raleigh
County Jail to await transfer to Bluefield, West
Virginia for arraignment.   Within fifteen minutes of
being placed in the felony cellblock, Ervin went into
the inmates' commons room to place a phone call to
his girlfriend.     While on the phone, Ervin was
assaulted by a fellow inmate, Ed Jordan.     The
attack occurred without any provocation.   The men
did not know one another nor had they even
exchanged words during the fifteen minutes that
Ervin had been in the cellblock.   Jordan was a large
man, and the one punch that he landed resulted in
severe facial injuries, including two fractures to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



127 F.3d 1099 (Table)                                                                                      Page   2
**(Cite as: 127 F.3d 1099, 1997 WL 664606, \*\*1 (4th Cir.(W.Va.)))**

Ervin's face and a fracture to one of his eye sockets. Both eyes began swelling immediately, and Ervin bled from his nose and eyes. Ervin's condition worsened over the next twelve hours.

Concerned that Ervin would cause problems, other inmates dragged him to his individual cell where Jordan told him that he would be killed if he told anyone who had punched him. Ervin did not alert jail officials to his condition, apparently out of fear of retaliation. No correctional officers approached Ervin to determine if he needed medical attention. Ervin's first contact with an officer at the jail occurred the following morning, September 11, 1990, when Officer Scott removed Ervin from the cell for transport to Bluefield. The parties dispute whether Officer Scott inquired about Ervin's injuries when Scott removed Ervin from the cell. While Ervin claims that Scott specifically asked him what had happened, Scott asserts that he did not converse with Ervin that morning.

**\*\*2** Ervin was released from the Raleigh jail into the custody of a state trooper who transported him to Bluefield for arraignment. After he had been arraigned on the drug charge, Ervin went immediately to Raleigh General Hospital where he remained for seven days. During that time, Ervin underwent reconstructive surgery and incurred nearly $16,000 in expenses.

Following his release from custody and subsequent medical treatment, Ervin filed this § 1983 claim in United States District Court for the Southern District of West Virginia against Mangum, Lilly, and Scott. In light of Ervin's status as a pretrial detainee, the district court appropriately evaluated the parties' cross-motions for summary judgment under the Due Process Clause of the Fourteenth Amendment. The district court rejected the defendants' argument that plaintiff failed to show the violation of any clearly established constitutional or statutory right and, in a brief order, denied both sides' summary judgment motions. This timely appeal followed.

II.

Federal courts of appeal are granted jurisdiction to hear "final decisions" of district courts pursuant to 28 U.S.C. § 1291 (1994). The Supreme Court has held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985).

Interpreting *Mitchell* in *Johnson v. Jones,* 515 U.S. 304 (1995), the Court appeared to restrict the reach of interlocutory appellate jurisdiction in cases in which qualified immunity has been denied. The *Johnson* Court held that defendants could not immediately appeal a denial of summary judgment based on qualified immunity when that order "resolved a *fact*-related dispute about the pretrial record." *Id.* at 307. The Court limited appellate jurisdiction under the *Mitchell* decision to cases that address "the purely legal issue [of] what law was 'clearly established.' " *Id.* at 313.

We held this appeal in abeyance pending our *en banc* decision in *Winfield v. Bass,* 106 F.3d 525 (4th Cir.1997) (en banc), which required us to resolve questions left by the Court's decision in *Johnson.* In *Winfield,* the district court denied defendants' motion for summary judgment based on qualified immunity. The defendants immediately appealed, challenging both whether the evidence was sufficient to support the factual allegations and whether "the undisputed facts disclose[d] that reasonable officers would have understood that their conduct violated [plaintiff]'s clearly established legal rights." *Winfield,* 106 F.3d at 530. This court rejected the first argument as a proper basis for jurisdiction and relied instead on the second. "[W]e possess no jurisdiction over a claim that a plaintiff has not presented enough evidence to prove that the plaintiff's version of the events actually occurred, but we have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them." *Id.*

**\*\*3** Like the district court in *Winfield,* the district court in this case has found that genuine issues of material fact are at issue--most importantly, the interaction between the plaintiff and Officer Scott on the morning of September 11. The defendants-appellants are correct to concede that this Court would have no jurisdiction to decide that "the district court incorrectly interpreted the facts of this case." *Appellants' Supp. Br.* at 4. Rather, defendants argue that summary judgment was appropriate because no clearly established right of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



127 F.3d 1099 (Table)                                                                            **Page   3**
**(Cite as: 127 F.3d 1099,  1997 WL 664606, \*\*3 (4th Cir.(W.Va.)))**

the plaintiff was violated.     The district court's denial of defendants' motion for summary judgment indicates that, in the view of the district court, a reasonable trier of fact could find that the defendants violated a clearly established right of which a reasonable person would have known.     *See Winfield,* 106 F.3d at 530.     Our consideration of that ruling provides the jurisdictional basis for this appeal.

 In reviewing the evidence as it relates to the motion for summary judgment, we consider all evidence in the light most favorable to the non-moving party. *Shealy v. Winston,* 929 F.2d 1009, 1011 (4th Cir.1991).     This is particularly important in this case because the parties dispute several critical facts. While Ervin claims that one eye was swollen completely shut, that the other eye was swollen nearly as badly as the other, and that he continued to bleed from his nose for over twelve hours, the defendants contend that Ervin's injuries were barely noticeable.     Additionally, Ervin claims that he and Officer Scott engaged in conversation in close proximity to one another on the morning of September 11, 1990, and that Scott mentioned previous instances in which inmates had been attacked by their fellow inmates.     Officer Scott denies any such conversation.     For purposes of our review, we resolve each of these discrepancies in favor of Ervin.

### III.
 Qualified immunity protects government officials from suits for civil damages arising out of the exercise of their discretionary functions. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1981).     This immunity is available when the conduct of a government employee "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

 In *Siegert v. Gulley,* 500 U.S. 226 (1991), the Supreme Court held that an appellate court may appropriately look to the merits of a case in which qualified immunity has been denied to determine whether a plaintiff has stated a cognizable claim at all.  "A necessary concomitant to the determination of whether a constitutional right ... is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Id.* at 232. Using this *Siegert* framework, we address each of

Ervin's claims in turn.

### A.
 The defendants contend that the district court erred in denying their motion for summary judgment on Ervin's claim of failure to protect.   We agree that the defendants are entitled to qualified immunity on the failure to protect claim and reverse as to all three defendants.

 **\*\*4** Ervin's § 1983 claim for failure to protect is based on substantive due process under the Fourteenth Amendment.     Because Ervin was a pretrial detainee and not a convicted prisoner at the time of the incident, this claim is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979); *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir.1988).     The due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner. " *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983).     This means that "while the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee ... may not be subjected to *any* form of 'punishment.' " *Martin,* 849 F.2d at 870.

 As a practical matter, however, we do not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim. *Hill v. Nicodemus,* 979 F.2d 987, 990-92 (4th Cir.1992); *Belcher v. Oliver,* 898 F.2d 32, 33 (4th Cir.1990).     Despite the Supreme Court's suggestion that pretrial detainees may be afforded greater protection than convicted prisoners, the circuit courts have generally analyzed both situations under the same "deliberate indifference" standard. *See Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir.1996); *Hare v. City of Corinth,* 74 F.3d 633, 643 (5th Cir.1996) (en banc); *Zarnes v. Rhodes,* 64 F.3d 285, 290 (7th Cir.1995); *Hill,* 979 F.2d at 991 n. * (citing cases); *Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir.1992); *Bass v. Jackson,* 790 F.2d 260, 262-63 (2d Cir.1986).

 In *Farmer v. Brennan,* 511 U.S. 825 (1994), the Supreme Court defined "deliberate indifference" for prisoner litigation under the Eighth Amendment. The Court began by observing that a prison

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



127 F.3d 1099 (Table)

**(Cite as: 127 F.3d 1099, 1997 WL 664606, \*\*4 (4th Cir.(W.Va.)))**

Page   4

official's "deliberate indifference" to "a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.   An Eighth Amendment claim must articulate both an objective and a subjective component. *Id.* at 834.   To satisfy the objective component, the plaintiff must show that an injury is sufficiently serious.   "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (quotation omitted).   We believe that Ervin's injuries are sufficiently serious to satisfy the objective component.

The second component of an Eighth Amendment claim is subjective.   It requires that the defendant have had a sufficiently culpable state of mind. *Id.* "In prison condition cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (citation omitted).   In *Farmer,* the Court held that a prison official is deliberately indifferent "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

**\*\*5** The evidence presented by Ervin in this case cannot support a finding that any of the defendants had the required state of mind.   Inmate Jordan had never threatened or assaulted any other inmates; in fact, he was in prison for having committed a non-violent offense.   Addi tionally, Ervin had been in jail for a total of fifteen minutes before Jordan assaulted him.   Neither Officer Scott nor other correctional officers had any basis for believing that Ervin was in any danger.   For that matter, Ervin had no reason to believe that he would be assaulted when he went into the commons room to make a phone call.   Jordan's violent actions were absolutely unanticipated, making it impossible for any of the defendants to have subjective knowledge of a risk of harm to Ervin.

Ervin focuses heavily on the fact that conditions at the Raleigh jail on September 10, 1990 were not in strict compliance with West Virginia regulations. First, Ervin points out that corrections officers were making rounds once an hour rather than every thirty minutes as is required by West Virginia regulations. This is of no consequence since Ervin was assaulted within the first fifteen minutes that he was incarcerated.   Second, Ervin notes that twenty-three inmates were incarcerated in the felony cellblock--

eight more than are allowed under state guidelines. But Ervin offers no evidence suggesting that the overcrowding contributed to Jordan's outburst. Based on our reading of the record, the assault was a completely random act that was just as likely to have occurred had there only been fifteen men in the cellblock.   We find that the connection between the conditions at the jail and the attack on Ervin are far too attenuated to support the contention that the defendants were deliberately indifferent to Ervin's health or safety. *See Best v. Essex County,* 986 F.2d 54, 57 (3d Cir.1993).

The sudden outburst by Jordan could not have been predicted;   Ervin and Jordan had never interacted with one another prior to the assault, and the defendants' failure to meet prison regulations was not causally related to Ervin's injuries.   Because the evidence in support of Ervin's claim for failure to protect cannot constitute the violation of a constitutional right, *Siegert,* 500 U.S. at 232, the defendants are entitled to qualified immunity on that claim.

### B.

The   "deliberate indifference"   standard that governed our analysis of Ervin's failure to protect claim also operates as the controlling standard in Ervin's claim that the defendants failed to provide ade quate medical care.   "Pretrial detainees ... are entitled to medical attention, and prison officials violate detainee's right to due process when they are deliberately indifferent to serious medical needs." *Hill v. Nicodemus,* 979 F.2d 987, 991 (4th Cir.1992) (quoting *Gordon v. Kidd,* 971 F.2d 1087, 1094 (4th Cir.1992)); *see also Martin,* 849 F.2d at 871.

First, we address the failure to provide medical care as it relates to defendants Mangum and Lilly. Deliberate indifference requires the subjective knowledge of an excessive risk to inmate health. *Farmer,* 511 U.S. at 837.   Mangum and Lilly must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and also [have] draw[n] the inference." *Id.* But Mangum, the former sheriff, and Lilly, the jail administrator, had no personal interaction with Ervin and, given their positions, could not "realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



127 F.3d 1099 (Table)                                                                                          **Page 5**
**(Cite as: 127 F.3d 1099, 1997 WL 664606, \*\*5 (4th Cir.(W.Va.)))**

*Antonelli v. Sheahan,* 81 F.3d 1422, 1428-29 (7th Cir.1996).

**\*\*6** Without actual knowledge of Ervin's injuries, Mangum and Lilly cannot be held liable for "deliberate indifference" to his need for medical care. There is absolutely no evidence that either Mangum or Lilly knew that Ervin had been attacked by a fellow inmate or that he had sustained any injuries for which he was in need of medical care. These facts cannot support the finding of a constitutional violation at all. *See Siegert,* 500 U.S. at 232. Therefore, the district court erred in denying Mangum and Lilly's motion for summary judgment based on qualified immunity.

Ervin's claim against Scott for failure to provide medical care, however, requires a separate analysis. Ervin alleges that on the morning of September 11 Officer Scott engaged in conversation with him at a distance of less than ten feet. A few hours later, Officer Scott processed Ervin out of the Raleigh County jail. Assuming these facts, Officer Scott was in a position to have actual knowledge of the seriousness of Ervin's condition and his need for immediate medical care. Officer Scott, unlike Mangum and Lilly, may have had the required state of mind under *Farmer v. Brennan* to be found deliberately indifferent to Ervin's need for medical care.

Scott argues, however, that Ervin's injuries were not sufficiently serious or obvious enough to support a finding of deliberate indifference. Were we not required to construe the facts in the light most favorable to Ervin, we would be more inclined to accept Scott's argument. The parties offer very different evaluations of Ervin's injuries, *compare Appellee's Br.* at 5 (the morning after he was punched in the face, "Ervin's right eye was swollen completely shut and his left eye was swollen to the point where he could see only from a small slit ... [and] Ervin continued to bleed from the nose as he had through the night") *with Appellant's Br.* at 20 ("the visible injury to the appellee, if there was any objective sign of injury, was not severe enough to require immediate treatment"), but it is the account offered by Ervin that must be accepted as true for purposes of our review of defendants' summary judgment motion. Ervin claims that Officer Scott looked directly at him from only ten feet away on the morning of September 11, but did not

acknowledge Ervin's condition. If Ervin's injuries were as bad and as obvious as he claims them to have been, we believe they should be considered "serious medical needs" to which jail officials cannot be deliberately indifferent.

As a final matter, we reject Officer Scott's suggestion that Ervin's failure to request medical attention should bar his ability to recover on a claim that he had been wrongfully deprived of medical care. Again, viewing the facts in the light most favorable to the nonmovant, Ervin had a legitimate reason for not bringing his injuries to the attention of prison officials. According to Ervin, Jordan "told me he was going to kill me if I told anybody who done it." Because Ervin's first, brief interaction with Jordan resulted in two swollen eyes, a broken face, and a bloody nose, it was reasonable for Ervin to be concerned for his safety and not request immediate medical attention.

**\*\*7** In order to be entitled to qualified immunity from suit for failure to provide medical care, Officer Scott must show, as a matter of law, that his actions could not have constituted "deliberate indifference" to Ervin's serious medical needs. We reject Scott's argument that it was not a violation of clearly established law to deny a pretrial detainee immediate medical care whose eyes were swollen shut, whose face was broken, and whose nose had bled all night and continued bleeding. The district court was therefore correct in denying Officer Scott summary judgment on Ervin's claim of failure to provide medical care.

                                    IV.

Having considered both of Ervin's constitutional claims with respect to each of the three defendants, we reach the following conclusions:

(1) Summary judgment is granted to all three defendants on Ervin's failure to protect claim.

(2) Summary judgment is also granted in favor of defendants Mangum and Lilly as to the claim for failure to provide medical care.

(3) Summary judgment is denied, and the case is remanded for trial, as to defendant Scott with respect to the claim for failure to provide medical care.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



127 F.3d 1099 (Table)
**(Cite as: 127 F.3d 1099, 1997 WL 664606, \*\*7 (4th Cir.(W.Va.)))**

The judgment of the district court is accordingly

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.*

WILKINS, Circuit Judge, concurring in judgment:

I agree with the result reached by the majority. I write separately to emphasize why this result is consistent with the decision of the Supreme Court in *Johnson v. Jones,* 515 U.S. 304 (1995), and our en banc decision in *Winfield v. Bass,* 106 F.3d 525 (4th Cir.1997) (en banc).

Both *Johnson* and *Winfield* stressed that in reviewing an interlocutory appeal by a governmental official whose claim of entitlement to summary judgment on the basis of qualified immunity has been rejected, a court of appeals possesses jurisdiction only to the extent that the official maintains his conduct did not violate clearly established law. *See Johnson,* 515 U.S. at 313; *Winfield,* 106 F.3d at 528-30. We do not possess jurisdiction under 28 U.S.C.A. § 1291 (West 1993) to the extent that the appealing official seeks to assert the insufficiency of the evidence to raise a genuine issue of material fact, and we may not undertake that review absent some independent jurisdictional basis. *See Johnson,* 515 U.S. at 318-20; *Winfield,* 106 F.3d at 529-30.

The majority acknowledges these holdings. *See supra* pp. 4-5. But, having done so, it immediately states that "[i]n reviewing the evidence as it relates to the motion for summary judgment, we consider all evidence in the light most favorable to the non-moving party," noting that "several critical facts" are disputed by the parties. *Supra* p. 5. The majority then undertakes a de novo evaluation of the evidentiary sufficiency of the material presented by Ervin, evaluating whether it is adequate to create a genuine issue of material fact to support his claim. The majority ultimately concludes that except for the claim of Officer Scott's deliberate indifference to a serious medical need, the evidence Ervin presented is insufficient to support his claims. *See supra* p. 7 (reasoning that "[t]he evidence presented by Ervin in this case cannot support a finding that any of the defendants had the required state of mind "--*i.e.,* subjective knowledge of a substantial risk of harm); *supra* p. 9 (concluding that "[t]here is absolutely no evidence that either Mangum or Lilly knew that

Ervin had been attacked by a fellow inmate or that he had sustained any injuries for which he was in need of medical care"). Because the majority fails to indicate that any independent justification is present for considering the sufficiency of the evidence, this analysis is in obvious tension with the holdings of *Johnson* and *Winfield.*

**\*\*8** Nevertheless, *Johnson* and *Winfield* acknowledged that in order to conduct the legal analysis that is properly considered on interlocutory appeal from a denial of summary judgment on the basis of qualified immunity, a reviewing court must know the factual circumstances to which the legal standards are to be applied. *See Johnson,* 515 U.S. at 319; *Winfield,* 106 F.3d at 533. The question arises, then, how a reviewing court is to determine the factual basis to which it should look in resolving the legal question over which it possesses jurisdiction. The *Johnson* Court recognized that it will often be possible for an appellate court to utilize the facts that were assumed by the district court in denying the motion for summary judgment. *See Johnson,* 515 U.S. at 319. But, the Court also accepted that when the district court fails to set forth the facts on which its decision was based, "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Id.* And, we have held:

[W]hen a district court fails fully to set forth the facts supporting its legal conclusion that a government official is not entitled to qualified immunity, the court of appeals must review the materials submitted to the district court to determine what the record, viewed in the light most favorable to the nonmoving party, discloses in order to have a factual basis upon which to base its legal conclusion.
*Winfield,* 106 F.3d at 533.

Here, in ruling on the motion for summary judgment, the district court explained only:
In support of [Ervin's] claim, he has submitted deposition testimony indicating that at least one of the prison officials was aware that the inmate who assaulted [Ervin] was violent and/or dangerous. (Plaintiff's Dep. p. 81). Also,[Ervin] alleges he sat in his cell all night long bleeding heavily from the injuries he sustained as a result of an assault by another inmate. (Plaintiff's Dep. 63)....

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



127 F.3d 1099 (Table)

**(Cite as: 127 F.3d 1099, 1997 WL 664606, \*\*8 (4th Cir.(W.Va.)))**

Therefore, [Ervin] in this case has raised a genuine issue as to whether his Fourteenth Amendment rights were violated.

J.A. 127-28. Obviously, this ruling falls short of providing an adequate factual basis for us to conduct a review of the officials' entitlement to qualified immunity. The information set forth by the district court relating to Ervin's claim of deliberate indifference to an actual risk of harm does not indicate which of the defendants possessed knowledge of a risk or what risk was posed. Further, the factual information relating to Ervin's claim of deliberate indifference to a serious medical need fails to indicate that any of the defendants possessed knowledge of Ervin's medical condition. This lack of specificity in the ruling of the district court dictates that we must conduct a review of the record to determine what the evidence, viewed in the light most favorable to Ervin, discloses. *See White ex rel.   White v. Chambliss,* 112 F.3d 731, 735 n. 1 (4th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3129 (U.S. July 31, 1997) (No. 97-204). Hence, under these circumstances it is necessary to conduct the type of analysis undertaken by the majority, and I agree with its ultimate conclusion that, viewed in the light most favorable to Ervin, the undisputed facts demonstrate that the prison officials are entitled to qualified immunity on Ervin's claims of deliberate indifference to a substantial risk of harm and, except for Officer Scott, to a serious medical condition.

127 F.3d 1099 (Table), 1997 WL 664606 (4th Cir.(W.Va.)) Unpublished Disposition

**Briefs and Other Related Documents (Back to top)**

. **1997 WL 33539513 (Appellate Brief) Supplemental Brief of Appellants (Feb. 24, 1997)Original Image of this Document (PDF)**

. **1997 WL 33539515 (Appellate Brief) Supplemental Brief of Appellee in Light of Winfield v. Bass (Feb. 24, 1997)Original Image of this Document (PDF)**

. **1993 WL 13037686 (Appellate Brief) Brief of Appellants (Jan. 03, 1993)Original Image of this Document (PDF)**

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                    **Page    1**
Not Reported in F.Supp., 1996 WL 18883 (N.D.Ill.)
**(Cite as: 1996 WL 18883 (N.D.Ill.))**
c

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
**Harold R. FREEMAN, Plaintiff,**
v.
**Michael F. SHEAHAN, Sheriff, Cook County**
**Department of Corrections, J.W.**
**Fairman, Director, Cook County Department of**
**Corrections, James Carey,**
**Superintendent, Cook County Department of**
**Corrections, Division #6, C/O Rogan,**
**Jailer, C/O Donohoe, Jailer, Sgt. James, Jailer,**
**C/O Oture, Jailer, C/O**
**Buckley, Jailer, C/O Smith, Jailer, Defendants.**
**No. 94 C 1776.**

Jan. 17, 1996.

*MEMORANDUM OPINION AND ORDER*

HART, District Judge.

**\*1** *Pro se* plaintiff Harold Freeman alleges that he
suffered various constitutional violations while held
as a pretrial detainee at the Cook County Jail.
Named as defendants are Cook County Sheriff
Michael Sheahan, Director of the Cook County
Department of Corrections J.W. Fairman, Cook
County Department of Corrections Superintendent
of Division 6 James Carey, and two Cook County
Jail guards, Felix James and Maureen Donohoe.
Four other guards have been named as defendants,
Roan, Oture, Buckley, and Smith, but none of them
have been served with process. [FN1]

The served defendants have moved to dismiss
plaintiff's amended complaint. On a motion to
dismiss, plaintiff's well-pleaded allegations of fact
are taken as true and all reasonable inferences
therefrom are drawn in plaintiff's favor. *Leatherman
v. Tarrant County Narcotics Units,* 113 S. Ct. 1160,
1161 (1993); *Swofford v. Mandrell,* 969 F.2d 547,
549 (7th Cir. 1992). Since plaintiff is proceeding
*pro se,* his pleadings must be construed liberally and
held to less stringent standards than those applied to
pleadings drafted by attorneys. *Id.; Haines v.
Kerner,* 404 U.S. 519, 521 (1972). Also, in

considering plaintiff's allegations, allegations
contained in his answer to the motion to dismiss
must be considered even if not contained in his
complaint or attachments to the complaint.
*Swofford,* 969 F.2d at 549; *Matzker v. Herr,* 748
F.2d 1142, 1148 n.5 (7th Cir. 1984). Furthermore,
it is unnecessary to specifically identify the legal
basis for a claim as long as the facts alleged would
support relief. *Bartholet v. Reishauer A.G. (Zurich),*
953 F.2d 1073, 1078 (7th Cir. 1992); *Black v.
Lane,* 22 F.3d 1395, 1400 (7th Cir. 1994).

Plaintiff divides his complaint into six causes of
action, which will be referred to as Counts I through
VI. Plaintiff characterizes Count I as a First
Amendment claim. [FN2] Plaintiff claims that he
filed numerous administrative grievances regarding
the conditions under which he was confined at Cook
County Jail but they were not processed and he
received no ruling or response. In this count, he also
claims he was twice retaliated against for
complaints. In the first instance, he was transferred
to a new cell after he orally complained about not
being provided with an in-cell dinner tray after he
had been visiting with someone during dinner. In
the second instance, plaintiff alleges he was
transferred to a different prison following
complaints of not receiving adequate medical care. It
is unclear if these complaints included the filing of a
formal grievance or were only oral complaints to his
custodians.

Count II is characterized as a Fourteenth
Amendment procedural due process claim. It repeats
the claim that defendants failed to address plaintiff's
grievances.

Count III is characterized as an Eighth Amendment
claim [FN3] and concerns the conditions of
plaintiff's confinement. Plaintiff complains that he
was forced to sleep on the cold floor or on a
mattress on the cold floor. He also complains that
his mattress was stained with urine and blood, that
toilets twice overflowed on his mattress, and that the
floor was littered with garbage which also attracted
vermin.

**\*2** Count IV is a claim that defendants failed to
adequately protect plaintiff from being injured
during fights between other inmates. Plaintiff also

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



claims that defendants were deliberately indifferent to his serious medical needs in failing to promptly treat a toe injury and eye injury.

Count V is a claim that plaintiff suffered a deprivation of First and Eighth Amendment rights, as well as equal protection, in that he was denied a dinner tray on one occasion and had to go thirteen hours without being served any food.

Count VI is a claim that plaintiff suffered an eye injury while at Cook County Jail. It is unclear how this claim is distinct from the failure to protect and deliberate indifference to serious medical needs claims alleged in Count IV.

In their reply, defendants raise for the first time the possible applicability of 18 U.S.C. § 3626. [FN4] That statute, which went into effect on September 13, 1994, places limits on relief that can be granted in Eighth Amendment claims based on overcrowding. It is unclear if defendants contend this statute limits all claims or only claims based on overcrowding. For a number of reasons, however, the statute is inapplicable to any of plaintiff's claims. First, except perhaps for a short time just before he was transferred out of Cook County Jail, plaintiff was a pretrial detainee at the times pertinent to this lawsuit. Therefore, any claim he makes is not pursuant to the Eighth Amendment, making the statute inapplicable. *Alexander v. Boyd,* 876 F. Supp. 773, 779 n.8 (D.S.C. 1995). Second, the statute did not go into effect until September 13, 1994 and is inapplicable to damages claims based on conduct occurring prior to that date. *Cooper v. Noble,* 41 F.3d 212, 212 (5th Cir. 1994). In light of the reopening provisions of § 3626(c), the new statute could apply to pre-September 1994 cases in which injunctive relief is granted based on Eighth Amendment overcrowding. The present case, however, is not pursuant to the Eighth Amendment and consideration of injunctive relief has been rendered moot by plaintiff's transfer out of Cook County Jail. *See Houston v. Sheahan,* 62 F.3d 902, 903 (7th Cir. 1995). Third, some, if not all of plaintiff's claims, would not involve any relief based on overcrowding, which is the only type of violation to which the statute can apply. *See Tabech v. Gunter,* 869 F. Supp. 1446, 1450-51 (D. Neb. 1994). Section 3626 does not affect any of plaintiff's claims.

By itself, failing to process a prisoner's administrative grievances does not violate any First Amendment right. *Azeez v. DeRobertis,* 568 F. Supp. 8, 10 (N.D. Ill. 1982); *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991); *Pryor-El v. Kelly,* 892 F. Supp. 261, 275 (D.D.C. 1995). However, failure to provide an adequate grievance procedure can constitute a due process violation if the grievance involves a liberty or property interest for which a person is entitled to a hearing (or other adequate process) and no procedure satisfying due process is provided. *See Williams v. Ramos,* 71 F.3d 1246, 1995 WL 726545 \*1-2 (7th Cir. Nov. 13, 1995); *Zarnes v. Rhodes,* 64 F.3d 285, 292 (7th Cir. 1995); *Whitford v. Boglino,* 63 F.3d 527, 531-33 (7th Cir. 1995). Plaintiff does not specifically identify the nature of the grievances, but alleges they involve the conditions of his confinement of which he otherwise complains in the complaint. Except to the extent the conditions violate the Constitution, in which case a prisoner's due process rights are satisfied by being able to file a court suit, *Azeez,* 568 F. Supp. at 10, there is no general constitutional right to an administrative hearing contesting the conditions of confinement. *King v. Fairman,* 997 F.2d 259, 262 n.4 (7th Cir. 1993); *Caldwell v. Miller,* 790 F.2d 589, 603 (7th Cir. 1986); *Buckley,* 997 F.2d at 495; *Pryor-El,* 892 F. Supp. at 275; *Sherman v. Fairman,* 1991 WL 191316 \*6 (N.D. Ill. Sept. 23, 1991), *appeal dismissed,* 998 F.2d 1016 (7th Cir. 1993). It is possible that state statutes create a protectable interest in certain conditions, the denial of which would require a hearing, but plaintiff alleges no specific rights that might be statutorily mandated, but which he was denied. Since the facts alleged do not support that constitutional due process required a hearing, plaintiff has no cognizable constitutional claim based on the denial of a grievance procedure for complaining of the conditions of his confinement.

**\*3** Plaintiff also complains that his First Amendment rights were violated when he was retaliated against for having filed grievances. Even if not entitled to either a grievance hearing or to be assigned to a particular location in a prison, punishing a prisoner through a retaliatory transfer for having filed a grievance violates the First Amendment. *See Cain v. Lane,* 857 F.2d 1139, 1143 (7th Cir. 1988); *Howland v. Kilquist,* 833

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



F.2d 639, 644 (7th Cir. 1987); *Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir. 1989); *Geder v. Godinez,* 875 F. Supp. 1334, 1339 (N.D. Ill. 1995); *Houlihan v. Moyihan,* 1989 WL 75459 \*3 (N.D. Ill. June 27, 1989). The complaint, however, still must allege a chronology of events from which retaliation can be inferred. *Black v. Lane,* 22 F.3d at 1399.

 Plaintiff alleges two instances of purported retaliation. In the first instance, plaintiff alleges that he complained about not having a meal tray available when he returned from the visiting room. He further alleges that thereafter the following occurred.
20. A short while later, defendant Donohoe returned and stated: "... there are no more trays in the building .... Sergeant James said 'if you cause any further problems about a dinner tray ... he will come handle things the hard way ....'"
21. Approximately five minutes later, plaintiff was told, by C/O Donohoe, to pack your things you're being moved.
22. Plaintiff was transferred from Div. 6 (1-h) to Div. 6 (2-A) cell upper-3, with two other detainees, forced to, again, sleep on the floor, with no food for the next thirteen hours, until the following morning meal.
 Second Amended Complaint ¶¶ 20-22 (ellipses in original, typographical or grammatical errors corrected).

 These allegations do not support a claim of retaliation. Retaliation is harming someone for exercising protected conducted. Plaintiff does not allege that any harm was inflicted upon him. He alleges that he was transferred from one cell in which he slept on the floor to another cell in which he had to sleep on the floor. Plaintiff also alleges that the same two cellmates were transferred along with him. He was not placed in any worse situation than he already was in and certainly was not handled the "hard way" as had allegedly been threatened. Therefore, no retaliation occurred and there is an insufficient basis for inferring a retaliatory motive.

 The second purported instance of a retaliatory transfer involves a transfer out of Cook County Jail to the Joliet Correctional Center. *See* Second Amended Complaint ¶¶ 56-61. [FN5] It is alleged that he was transferred there eight days after he inquired about not being scheduled for a medical appointment. It is also alleged that Joliet was where he was to begin an eight year term of imprisonment. Cook County Jail is for pretrial detainees and convicts serving shorter sentences. It cannot be inferred that a transfer from a county jail to a penitentiary to serve a sentence of incarceration was motivated by retaliation.

 \*4 Plaintiff has not stated any claim supporting that he was either denied a due process procedure to which he was entitled or that he was improperly transferred in retaliation for exercising his First Amendment right to petition the government. Counts I and II will be dismissed.

 In Count III, plaintiff complains of his conditions of confinement. Plaintiff complains he had to sleep on a mattress on the floor. He also complains that the mattress was stained with dried up blood and urine. On two different occasions, toilets overflowed onto his mattress. Each time, his mattress was replaced shortly thereafter. It is also claimed that where he slept was not adequately cleaned, resulting in a stench and vermin. No cognizable claim is stated by these allegations. The conditions alleged do not rise to a level that would constitute cruel and unusual punishment and concomitantly violate the due process rights of a pretrial detainee, nor is there any allegations that any of these conditions were specifically imposed on plaintiff by one of the defendants for the purpose of punishing plaintiff. *See Houston,* 62 F.3d at 903; *Lee v. Penison,* 1995 WL 669106 \*3-4 (N.D. Ill. Nov. 7, 1995); *Summers v. Sheahan,* 883 F. Supp. 1163 (N.D. Ill. 1995); *Evans v. Sheahan,* 1995 WL 127781 \*2 (N.D. Ill. March 22, 1995). Count III will be dismissed.

 Counts IV and VI contain claims of failure to protect plaintiff from other inmates and failure to provide adequate medical care. Pretrial detainees have a constitutional right to be protected from other detainees. *Zarnes,* 64 F.3d at 289-90. Such a claim requires allegations that the defendant was deliberately indifferent to a substantial risk to the detainee's safety. *Id.* at 290. A conclusory allegation as to a defendant's mental state of deliberate indifference is often sufficient. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."); *Zarnes,* 64 F.3d at 290. However, a plaintiff can plead himself out of court by alleging

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
**(Cite as: 1996 WL 18883, \*4 (N.D.Ill.))**

Page    4

additional facts showing that a conclusory allegation is not true. *Jackson v. Marion County,* 66 F.3d 151, 153-54 (7th Cir. 1995); *Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir. 1993), *cert. denied,* 114 S. Ct. 1837 (1994); *Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir. 1992); *Greer v. Roth,* 1995 WL 476594 \*1 (N.D. Ill. Aug. 9, 1995). Also, where allegations are inconsistent with a document provided by that party, the document will override the allegation. *See Beam v. IPCO Corp.,* 838 F.2d 242, 245 n.3 (7th Cir. 1988).

In his complaint, plaintiff's only allegation regarding failure to protect is the following:
On 03-06-94, approximately 12:00 p.m., plaintiff was traveling through D-well staircase, returning from church, where there was an "unsupervised work crew" mopping, waxing and buffing the stairways, landing, etc., when approximately 12 gang members started to fight, causing the plaintiff to fall and hit his right eye on the corner of the hand rail. When plaintiff returned to his assigned tier, Div. six (2-a), plaintiff immediately informed defendant Oture who then called the paramedics, but received no answer.
**\*5** Second Amended Complaint ¶ 42 (typographical or grammatical errors corrected). In his answer brief, plaintiff additionally alleges that defendants Fairman and Sheahan have a policy of locking unoccupied jail cells during the day. [FN6] It is generally alleged that this policy is deliberately indifferent to the safety of inmates because it ignores that inmates need to be able to return to their cells to avoid the "gang violence" that often erupts during the day.

Even assuming that a policy of locking unoccupied jail cells can satisfy the deliberate indifference standard, plaintiff's allegations do not support that this policy caused his injury. Plaintiff alleges that he happened upon a fight when returning from religious services. He was injured because he happened to be walking through this location, not because he was unable to immediately go to his cell for protection. Since the alleged policy did not cause him injury, defendants Fairman and Sheahan cannot be liable even if they were responsible for this policy and the policy constituted deliberate indifference to inmate safety.

Although not argued in his brief, plaintiff alleges in the complaint that the cleaning crew was unsupervised. No defendant, however, is alleged to be responsible for the crew being unsupervised. Therefore, it need not be considered whether permitting unsupervised work crews can constitute deliberate indifference to other inmates being accidently injured when a fight erupts.

Counts IV and VI also allege failure to adequately treat two injuries, a toe injury and an eye injury. Plaintiff claims that he injured the big toe of his right foot when he was pushed into a bunk bed. In order to succeed on a claim of inadequate medical care, a detainee must allege that he or she had a serious medical need and that the defendant acted with deliberate indifference to that need. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995); *Martin v. Debruyn,* 880 F. Supp. 610, 613 (N.D. Ind. 1995).

Plaintiff does not specify the nature of his toe injury. However, the prescribed treatment was Tylenol and Motrin. Plaintiff received six Tylenol capsules two days after the injury, but needed more than that. Motrin was prescribed five days after the injury, but that prescription was not filled for another eight days thereafter. Plaintiff also complains that his toe was not x-rayed, but he does not allege that his toe was actually broken or that he suffered any permanent injury due to any lack of treatment or delay in treatment. These allegations do not support the existence of a serious medical need. *Cf. Hammonds v. Richards,* 1992 WL 86059 \*9 (N.D. Ind. Jan. 17, 1992) (arthritic toe); *Martinas v. Lyons,* 1989 WL 51694 \*1 (E.D. Pa. May 11, 1989) (cut toe); *Landfair v. Sheahan,* 878 F. Supp. 1106, 1113 (N.D. Ill. 1995) (athlete's foot; denied aspirin among other medications); *Anderson-El v. O'Keefe,* 897 F. Supp. 1093, 1097 (N.D. Ill. 1995) (abrasion requiring only Advil and Tylenol for treatment); *O'Loughlin v. Doe,* 920 F.2d 614, 617 (9th Cir. 1990) (denial of aspirin and antacid prescribed for headaches, nausea, and pain); *Barnett v. Goldenson,* 1995 WL 681270 \*2 (N.D. Cal. Nov. 6, 1995) (denial of medication for sinus headache); *Campbell v. Koehler,* 1988 WL 31850 \*1 (S.D.N.Y. March 28, 1988) (six and one-half hour delay in receiving Motrin and hot compress for twisted neck). The medical treatment claim regarding the toe injury will be dismissed.

**\*6** Plaintiff also alleges that he received inadequate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                Page   5
(Cite as: 1996 WL 18883, *6 (N.D.Ill.))

care for an eye injury. As previously recited his eye was injured at approximately noon on March 6, 1994 when he came upon a fight between other inmates and bumped his right eye against the corner of a railing. Plaintiff informed defendant Oture of what happened and Oture called for paramedics who did not respond. Plaintiff subsequently informed Oture that he could not see out of that eye and Oture ordered him to remain in his cell until paramedics were available. Plaintiff went to sleep and awoke at 4:35 p.m. with a severe headache. He then informed defendant Buckley as to what had happened and was told to wait until lockdown. Buckley then took plaintiff to James and James inquired why nothing had been done previously. After being told what happened, James ordered Buckley to write an incident report and make sure plaintiff was examined as soon as possible. Five hours later, plaintiff was finally examined by a paramedic. It was determined that plaintiff should go to the emergency room, but a transport officer never arrived to take him.

 The next morning, plaintiff informed defendant Smith of what happened. Smith walked plaintiff to the health unit of the jail where he was immediately examined by a doctor and immediately thereafter transported to a hospital emergency room. Plaintiff was hospitalized until March 14. He was diagnosed as having traumatic iritis, hyphema, choroidal detachment, and a vitreous hemorrhage. He was given a March 17 follow-up appointment at which it was to be determined if surgery was necessary.

 Unspecified jail employees failed to take plaintiff to the March 17 appointment. He was subsequently told that there had been no one to transport him so his appointment had been rescheduled. While still at Cook County Jail, the only treatment he received was fresh tape for his eye patch and Tylenol. On March 25, plaintiff was transferred to Joliet Correctional Center. Initially, the only treatment provided was Motrin. In April 1994 or shortly thereafter, plaintiff was examined by an optometrist who prescribed tinted, prescription glasses. It is alleged that plaintiff would suffer severe headaches if he did not use tinted glasses. It is also alleged that plaintiff's vision continues to be blurred and that he frequently has headaches. He allegedly is not presently receiving any medical attention for his eye problem.

 The injury to plaintiff's eye, including temporary loss of sight, is a serious medical need. *Wilson v. Friedrichs,* 1995 WL 261391 *3 (N.D. Cal. April 26, 1995); *Brown v. Hill,* 1994 WL 570880 *4 (E.D. Pa. Oct. 17, 1994); *Davis v. Oklahoma Department of Corrections,* 516 F. Supp. 5, 7 (W.D. Okla. 1980). However, no defendant is liable unless his or her conduct was deliberately indifferent to that need. *See id.*

 The only served defendant who is named in these allegations is James. As to James, however, it is alleged that he immediately ordered one of the guards under him to ensure that plaintiff received prompt treatment. James, therefore, is not alleged to be deliberately indifferent. The allegations as to Smith also do not constitute deliberate indifference; Smith personally walked plaintiff to the health unit upon being informed of plaintiff's condition.

 *7 Plaintiff's allegations regarding not being taken to his March 17 appointment do not identify any defendant as being responsible for failing to take him. Therefore, plaintiff does not state any claim based on failure to take him to that appointment.

 As to Oture, it is alleged that he initially responded promptly by calling for a paramedic. That is not conduct constituting deliberate indifference. The paramedics did not respond promptly and Oture chose to wait at least four hours for the paramedics to arrive. Since it is alleged that Smith took plaintiff directly to the health unit, it must be inferred that Oture could have done the same. Delaying four hours while plaintiff lost vision in his eye is deliberate indifference. *See Brown,* 1994 WL 570880 at *4. Similarly, it must be assumed that Buckley could have done something to ensure that plaintiff would be seen sooner than five hours after Buckley's shift began. It is adequately alleged that Buckley acted with deliberate indifference.

 That Oture and Buckley acted with deliberate indifference to plaintiff's serious medical need does not end the inquiry. Plaintiff also must allege that the delay in receiving treatment caused injury, that is that the delay aggravated the injury already caused by plaintiff having hit his eye on the railing. *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.), *cert. denied,* 419 U.S. 879, and *vacated & remanded in part on other grounds,* 419 U.S. 813 (1974); *Ford v. Davis,* 878 F. Supp. 1124, 1129 (N.D. Ill. 1995)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



. Plaintiff does not expressly allege any such aggravation was caused by the delays of Oture and Buckley. However, construing the *pro se* allegations liberally, it can be inferred from allegations of a serious injury, that paramedics deemed plaintiff to be needful of emergency, and that plaintiff suffered permanent eye injury that delays in treatment aggravated the eye injury. Plaintiff adequately alleges that Oture and Buckley were deliberately indifferent to his serious eye injury. Other than that claim, Counts IV and VI will be dismissed.

 In Count V, plaintiff alleges he received no food for 13 hours, including missing dinner because no meal tray had been saved for him while he was with a visitor. Missing food for 13 hours does not constitute cruel and unusual punishment that violates the Fourteenth Amendment. *Ladd v. Hannigan,* 1995 WL 519918 \*1 (D. Kan. Aug. 9, 1995); *Islam v. Jackson,* 782 F. Supp. 1111, 1114 (E.D. Va. 1992); *United States v. Delker,* 1986 WL 9262 \*1 (E.D. Pa. Aug. 20, 1986). The one-time denial of dinner because prison employees had failed to save enough dinner trays also does not state an equal protection violation. Neither do the allegations support a First Amendment claim; meals were unavailable before plaintiff began complaining. Count V will be dismissed.

 All of plaintiff's claims will be dismissed except the deliberate indifference to serious medical needs claim against defendants Oture and Buckley based on delay in obtaining treatment for an eye injury. Those two defendants have not yet been served with process. As to those two defendants, plaintiff must submit a request to reissue summons and completed USM-285 forms. [FN7] If plaintiff does not do so by February 5, 1996, the remaining claims will be dismissed and judgment will be entered dismissing plaintiff's cause of action.

 **\*8** IT IS THEREFORE ORDERED that defendants' motion to dismiss [39] is granted. All claims are dismissed except the deliberate indifference to serious medical needs claim against defendants Oture and Buckley based on an eye injury. Plaintiff is granted until February 5, 1996 to submit a request to reissue summons accompanied by a completed USM-285 form for each of those two defendants. Failure to comply by that date will result in dismissal of plaintiff's cause of action.

FN1. Summons were issued, but they were returned by the marshal unexecuted. The arguments made by the defendants who have been served will be considered as to the unserved defendants as well. To the extent any claims remain against the unserved defendants, plaintiff will be given further opportunity to ensure that they are served with process.

FN2. It is recognized that only the Fourteenth Amendment applies to state actors. Characterization of a claim as being one pursuant to the First Amendment is construed as shorthand for a claim pursuant to the Fourteenth Amendment which incorporates standards of the First Amendment.

FN3. Again, this claim would have to be one pursuant to the Fourteenth Amendment. The Eighth Amendment does not apply to the states, nor does it apply to pretrial detainees.

FN4. The statute provides:
(a) Requirement of showing with respect to the plaintiff in particular.--
(1) Holding.--A Federal court shall not hold prison or jail crowding unconstitutional under the eighth amendment except to the extent that an individual plaintiff inmate proves that the crowding causes the infliction of cruel and unusual punishment of that inmate. (2) Relief.--The relief in a case described in paragraph (1) shall extend no further than necessary to remove the conditions that are causing the cruel and unusual punishment of the plaintiff inmate.
(b) Inmate population ceilings.--
(1) Requirement of showing with respect to particular prisoners.--A Federal court shall not place a ceiling on the inmate population of any Federal, State, or local detention facility as an equitable remedial measure for conditions that violate the eighth amendment unless crowding is inflicting cruel and unusual punishment on particular identified prisoners.
(2) Rule of construction.--Paragraph (1) shall not be construed to have any effect on Federal judicial power to issue equitable relief other than that described in paragraph (1). including the requirement of improved medical or health care and the imposition of civil contempt fines or damages. where such relief is appropriate.
(c) Periodic reopening.--Each Federal court order or consent decree seeking to remedy an eighth amendment violation shall be reopened at the behest of a defendant for recommended modification at a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



minimum of 2-year intervals.
18 U.S.C. § 3626.

FN5.    Paragraph 67 of the Second Amended
Complaint cites these paragraphs as constituting a
retaliatory transfer. Paragraphs 57 and 58 refer to
complaints of lack of medical treatment and ¶ 61
alleges a transfer to Joliet. In his answer brief,
plaintiff refers to being transferred in retaliation for
complaining about the conditions of his confinement,
but does not identify the particular transfer. The
brief does not allege a sufficient chronology of
events. Additionally, transferring a detainee out of a
cell that he has claimed is in intolerable condition
would not be retaliation, unless he was transferred to
one in even worse condition. Instead, such a transfer
would appear to be granting of relief in response to
the grievance.

FN6.   Plaintiff alleges that inmates are locked out of
their cells during the day, but also attaches a copy of
the written policy, which clarifies that cells are only
locked if the inmates are not in the cells.

FN7.    Two USM-285 forms are being sent to
plaintiff with this order.

Not Reported in F.Supp., 1996 WL 18883
(N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

. 1:94cv01776 (Docket) (Jun. 30, 1994)

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Westlaw.

49 Fed.Appx. 626

Page 1

49 Fed.Appx. 626

**(Cite as: 49 Fed.Appx. 626)**

c

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

Please use FIND to look at the applicable circuit court rule before citing this opinion. Seventh Circuit Rule 53. (FIND CTA7 Rule 53.)

United States Court of Appeals,
Seventh Circuit.
Frank JONES, Plaintiff-Appellant,
v.
James A. VAN FLEIT, Defendant-Appellee.
**No. 01-4303.**

Submitted Oct. 9, 2002 [FN*].

> FN* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Decided Oct. 11, 2002.

State prisoner, who suffered permanently blurred vision and light sensitivity in left eye after optometrist did not immediately treat retinal tear following injury to his eye, brought § 1983 action against optometrist and others, alleging a violation of his Eighth Amendment rights to medical care while in prison. The United States District Court for the Northern District of Indiana, Allen Sharp, J., entered summary judgment for optometrist, and prisoner appealed. The Court of Appeals held that prisoner failed to prove that optometrist was subjectively aware of his serious medical needs, and thus failed to prove that optometrist acted with deliberate indifference in violation of Eighth Amendment right to medical care.

Affirmed.

West Headnotes

**Prisons ☞17(2)**
310k17(2) Most Cited Cases

**Sentencing and Punishment ☞1546**
350Hk1546 Most Cited Cases
Prisoner, who suffered permanently blurred vision and light sensitivity in one eye after optometrist did not immediately treat retinal tear following eye injury, failed to prove that optometrist was subjectively aware of the prisoner's serious medical needs, and thus failed to prove that optometrist acted with deliberate indifference in violation of Eighth Amendment right to medical care, where optometrist did not initially observe the retinal tear, and prisoner did not complain of the classic signs of retinal tear; mere negligence was not enough to prove constitutional violation. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.
***627** Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. No. 00 C 582. Allen Sharp, Judge.

Before Hon. KENNETH F. RIPPLE, Hon. MICHAEL S. KANNE, Hon. ILANA DIAMOND ROVNER, Circuit Judges.

ORDER
Frank Jones brought this action under 42 U.S.C. § 1983 alleging a violation of his Eighth Amendment rights. Jones, an Indiana prisoner, asserts that Dr. James A. Van Fleit failed to provide him with proper medical care after he injured his left eye.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 Fed.Appx. 626                                                                    Page 2

49 Fed.Appx. 626

**(Cite as: 49 Fed.Appx. 626)**

The district court granted Dr. Van Fleit's motion for summary judgment, and Jones filed a timely appeal. We affirm.

The relevant facts are undisputed. On August 10, 1998, Jones was poked in the left eye by another inmate while the two were playing basketball. On August 11, a prison physician treated Jones and determined that he had suffered a subconjunctival hemorrhage, or a torn blood vessel in the eye. The prison physician referred Jones to Dr. Van Fleit, a privately employed optometrist who provides part-time vision services to inmates under a contract with the state prison system. When Dr. Van Fleit examined Jones around August 26, Jones complained of blurred vision in his left eye but did not complain of light flashes or floaters (partial vision obstructions), the classic signs of a torn retina. Dr. Van Fleit saw no evidence of injury to the left eye beyond the subconjunctival hemorrhage, which had already cleared. And although one procedure he conducted allowed him to view the posterior chamber of the eye, including the retina, Dr. Van Fleit saw no sign of retinal damage such as a tear, hole or hemorrhage. Ultimately he prescribed eyeglasses to correct Jones' vision.

On September 30, 1998, Jones was again referred to Dr. Van Fleit. This time he complained that his vision was blurry and green, and Dr. Van Fleit discovered a partial retinal tear and other signs of injury in Jones' left eye. Dr. Van Fleit immediately referred Jones to Wishard Memorial Hospital, where he received emergency care and has since undergone several surgeries to treat the retinal tear. Jones asserts that if his injury had been treated immediately, he would have suffered few if any negative results from his injury. As it is, however, Jones will permanently have blurred vision and sensitivity to light in his left eye.

The district court concluded that Dr. Van Fleit acted under color of state law for purposes of § 1983 when he treated Jones, *see West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), but nonetheless granted summary judgment for the physician because Jones had presented no evidence that Dr. Van Fleit acted with deliberate indifference.

We review *de novo* the grant of summary judgment and construe the record and all reasonable inferences drawn from it in **\*628** the light most favorable to the non-moving party. *Del Raso v. United States,* 244 F.3d 567, 570 (7th Cir.2001). Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact for trial, Fed. R. Civ. Pro. 56(c), or when the non-moving party fails to make a showing sufficient to prove an element on which he will bear the burden of proof at trial, *Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Eighth Amendment's prohibition against cruel and unusual punishment requires that states provide their prisoners with proper medical care. *See Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A mere failure to provide medical care, however, does not automatically violate the Eighth Amendment. A prisoner must meet a two-part test to prove a constitutional deprivation: (1) the prisoner must show that his medical needs were "objectively, sufficiently serious," and (2) the prisoner must demonstrate that a prison official was deliberately indifferent to those needs. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The first element is an objective one. A prisoner's medical need is objectively serious if it is " 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Zentmyer v. Kendall County, Ill.,* 220 F.3d 805, 810 (7th Cir.2000) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997)). Dr. Van Fleit agrees that, in hindsight, Jones' injury was serious. Thus this appeal turns on whether Dr. Van Fleit was deliberately indifferent to that injury.

The second element is subjective. To prove deliberate indifference, the prisoner must show that the prison official "was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to a prisoner's health or safety." *Wynn v. Southward,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 Fed.Appx. 626

Page 3

49 Fed.Appx. 626

**(Cite as: 49 Fed.Appx. 626)**

251 F.3d 588, 593 (7th Cir.2001). Jones never demonstrated a genuine issue of material fact on this point. He essentially contends that the course of treatment provided by Dr. Van Fleit was insufficient, but an inmate's disagreement with the course of treatment cannot establish deliberate indifference. *Snipes v. DeTella,* 95 F.3d 586, 591 (7th Cir.1996). At best Jones alleges that Dr. Van Fleit provided negligent medical care, but mere negligence is not enough to prove a constitutional violation. *Peate v. McCann,* 294 F.3d 879, 882 (7th Cir.2002). Since Jones offered no evidence that his injury was readily apparent and that Dr. Van Fleit either ignored the injury or deliberately failed to provide proper treatment, his arguments fail. *Steele v. Choi,* 82 F.3d 175, 179 (7th Cir.1996).

AFFIRMED.

49 Fed.Appx. 626

**Briefs and Other Related Documents (Back to top)**

• 01-4303 (Docket) (Dec. 26, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 283101 (N.D.Tex.)
(Cite as: 2001 WL 283101 (N.D.Tex.))
C

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Fort
Worth Division.
**Michael JONES, Plaintiff,**
v.
**David WILLIAMS, in his Capacity as Sheriff of
Tarrant County, Tarrant County
Hospital District, and Tarrant County Sheriff's
Department, [FN1]
Defendants.**

FN1. After initiating this action, Jones filed an
amended complaint that drops the Sheriff and the
Tarrant County Sheriff's Department from his suit
and proceeds only against Tarrant County and the
Tarrant County Hospital District.

**No. Civ.A. 4:99-CV-779-B.**

March 19, 2001.

*MEMORANDUM OPINION AND ORDER*

BLEIL, Magistrate J.

**\*1** Pending before the Court for determination is
Defendants' Motion for Summary Judgment filed
January 31, 2001. For the following reasons, the
Court finds that the motion is well taken and should
be granted.

A. STATEMENT OF THE CASE

In December 1998, while on parole, Jones visited
the emergency room of Huguley Hospital with
complaints of severe eye pain and black specks in
his vision. He was diagnosed by attending physician
Lyle Freedman as suffering from an inflammatory
eye condition and possible retina detachment.
Freedman referred Jones to Dr. Lee Anderson, a
retinal specialist. Anderson first saw Jones on
December 20, 1998, and diagnosed uveitis. [FN2]
Anderson prescribed eye drops and monitored his
patient's progress over the following month,
although Jones missed at least two scheduled
appointments with Anderson, on January 8, 1999
and January 15, 1999, without explanation.
Anderson reviewed Jones' eye condition on January
21, 1999 and told Jones to return in one month. The

record does not show whether Jones sought or
received any medical treatment for his eye condition
from January 21, 1999 until his detainment.

FN2. Uveitis is an inflammation of part or all of the
uvea, the middle tunic of the eye. DORLAND'S
ILLUSTRATED MEDICAL DICTIONARY 1785
(28 th ed.1994).

Jones was arrested and detained in the Green Bay
facility of the Tarrant County Jail on March 10,
1999 for failing to report to his parole officer.
[FN3] A few days later, Jones' mother delivered
some eye drops to the jail for her son, but the bottle
was almost empty. She offered to bring refills, but
was told that it was against jail policy for her to do
so. On March 14, 1999, Jones complained of pain in
his right eye, which was swollen shut, and said he
needed his medicine. Jones was taken to the
physician at the Tarrant County Jail, Dr. Sam
Gianos, who recommended that he see an eye
specialist. The following day, March 15, 1999,
Jones was taken to see an ophthalmologist resident
at John Peter Smith Hospital (JPS), who diagnosed
possible toxoplasmosis [FN4] and took a sample of
fluid for diagnostic testing. The resident prescribed
six medications and scheduled another appointment
for the following week. At that time, Jones'
condition was considered to be serious. On March
21, Jones submitted a request to view his medical
records for purposes of his upcoming revocation
hearing, but was told that he would have to have
someone "on the outside" request the records. Jones
was not returned to the eye clinic on March 23 rd as
scheduled because the retinal specialist had to cancel
and all appointments were reset for the following
week. Jones finally received three of the six
medications that had been prescribed by the resident
at JPS on March 25, 1999. On March 30, 1999,
Jones was taken to JPS again, where he was treated
by ophthalmologist Jason Kaplan, who told him that
toxoplasmosis had been ruled out as the causes of
his uveitis. Kaplan rewrote the missing prescriptions
and told Jones that he would need to return in one
week.

FN3. Jones was on parole for a drug-related offense.
In his complaint, Jones indicates that his parole was
revoked on April 26, 1999.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
(Cite as: 2001 WL 283101, *1 (N.D.Tex.))

Page   2

FN4. Toxoplasmosis is an acute or chronic, widespread disease of animals and humans transmitted by cat feces in contaminated soil, direct exposure to the infected feces, infected meat or blood. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1726 (28 th ed.1994).

Jones was not taken to the eye clinic the following week, and on April 5, 1999, he submitted a grievance to jail personnel stating that his eye condition was getting worse. On April 21, Gianos saw Jones in the jail's medical unit. When Jones complained that he was not receiving his eye medications, Gianos informed Jones that his medical records from JPS had been lost, but that all of the prescriptions had been filled. Gianos promised to look into why Jones was not receiving the medications. On April 22, Jones filed a formal grievance stating that he was not receiving his prescribed medications. On April 27, 1999, a staff nurse for the jail's medical department responded that they did have his medical records, but that they did not carry some of the prescribed medications. She noted that Jones had a visit scheduled soon at JPS and recommended that he ask his doctor to get him the medications.

*2 Jones did not receive the prescription medications that Kaplan ordered and was not taken to see Kaplan until May 4, 1999. By the time Jones was returned to Kaplan's office, he had no light perception in his right eye and was informed that nothing could be done to save the eye. Jones had his right eye removed on September 27, 2000. The etiology of Jones' eye condition has never been determined, although various theories have been considered and ruled out.

Jones has filed a lawsuit pursuant to 42 U.S.C. § 1983 alleging denial of due process under the Fourteenth Amendment and deliberate indifference by the Defendants, Tarrant County and the Tarrant County Hospital District, under the Eighth Amendment to the United States Constitution. Defendants have filed a motion for complete or partial summary judgment, which is now ripe for determination.

The Eighth Amendment, applicable to the states through the Fourteenth Amendment, abhors the infliction of punishment incompatible with "the evolving standards of decency that mark the

progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). The principles of the Eighth Amendment establish a government's obligation to provide medical care to those being punished with incarceration. See id. at 103, 97 S.Ct at 290. Accordingly, the government's deliberate indifference to the serious medical needs [FN5] of its prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Id. at 104, 97 S.Ct. at 291. Deliberate indifference may be manifested in different ways, including malpractice at the hands of the prison doctors who render treatment or the denial or delay of treatment by prison guards, but regardless of how it is evidenced, deliberate indifference states a cause of action under the civil rights statute in Title 42, Section 1983 of the United States Code. [FN6] Id. at 105, 97 S.Ct at 291.

FN5. It is undisputed for summary judgment purposes that Jones' eye condition presented a serious medical need. See generally Farmer v.. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).

FN6. The civil rights statute reads:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress
42 U.S.C. § 1983.

But not every claim of inadequate treatment states an Eighth Amendment violation. Inadvertent failure to provide adequate medical care does not constitute an unnecessary and wanton infliction of pain and is not considered repugnant to the conscience of mankind. Id. at 105-06, 97 S.Ct at 292. The prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Id. at 106, 97 S.Ct. at 292; Mayweather v. Foti, 958 F.2d 91, 91 (5 th Cir.1992). Deliberate indifference for purposes of the Eighth Amendment is a subjective standard: For an official to act with deliberate indifference, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
**(Cite as: 2001 WL 283101, \*2 (N.D.Tex.))**

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); *Domino v. Texas Dept. of Criminal Justice,* 239 F.3d 752, 755 (5 th Cir.2001). An official's failure to alleviate a significant risk that he should have perceived but did not, while not commendable, cannot be condemned as the infliction of punishment outlawed by the Eighth Amendment. [FN7] *See Farmer,* 511 U.S. at 838, 114 S.Ct. at 1979.

> FN7. Under exceptional circumstances, an official's knowledge of a substantial risk of harm may be inferred from the sheer obviousness of the risk. *See Reeves v. Collins,* 27 F.3d 174, 176 (5 th Cir.1994)(citing *Farmers,* 511 U.S. at 842 and n. 8, 114 S.Ct at 1981 and n. 8).

 \*3 Moreover, Jones brings his action against the county and the county hospital system that oversees medical care for the inmates, asserting that the denial of proper medical care by Defendants was a result of official policy. Section 1983 claims cannot be based on vicarious liability or a respondent superior theory. *Monell v. Dep't Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Stewart v. Murphy,* 174 F.3d 530, 536 (5 th Cir.1999). To hold the Defendants accountable for a violation of constitutional rights, Jones must show both (1) that the Defendants' employees violated his clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference. *See Olabisiomotosho v. City of Houston,* 185 F.3d 521, 528-29 (5 th Cir.1999); *Flores v. County of Hardeman,* 124 F.3d 736, 738 (5 th Cir.1997). *See generally Farmer,* 511 U.S. at 840-41, 114 S.Ct. at 1980-81. An official policy sufficient to support Section 1983 liability can be established by showing (1) the adoption and promulgation of a formal policy statement or regulation by lawmaking officers or an official with policy-making authority, or (2) a persistent widespread practice by municipal officials or employees that is so common and well settled as to constitute a custom that fairly represents municipal policy. *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5 th Cir.1984).

 Jones asserts that the failure to provide him with his prescription medications and transport him for scheduled follow-up visits constitutes deliberate indifference to his serious medical needs. According to their respective affidavits, Jones and his mother complained on multiple occasions about the lack of medication and questioned when he would be returned to the eye clinic. The medications that had been prescribed for Jones by the hospital doctors, but not given, included Sulfadiazine, Pyrimethamine, and Leucovorin, but pathology tests subsequently conducted on the preserved eye tissue show that depriving Jones of these medications probably did not accelerate the eye condition because the medications were prescribed to treat a condition Jones was ultimately found not to have. However, Jones has supplied expert testimony indicating that the fact that Jones was not timely taken to his scheduled appointments probably caused the enucleation of his right eye. Jones was being treated "empirically" for his eye condition, meaning that his ophthalmologist was attempting to diagnose and cure his condition by process of elimination.

 Jones maintains that he was denied his medications because the jail has an unconstitutional policy of refusing to dispense speciality medications in conscious disregard of the health and welfare of inmates in need of specialty medications not routinely kept on hand in the pharmacy. Jones relies on the April 27, 1999 response from Mary Holmes, a staff nurse for the jail's medical unit, suggesting that he get his medications from his doctor. But Holmes subsequently explained that she did not mean that the jail pharmacy could not obtain the drug. Instead, she thought it would be faster for Jones to get samples from his doctor or have it filled by the eye clinic's own pharmacy the same day he saw his doctor. Holmes admits that her written response was not clear, and as it turned out, may have been bad advice, but poor judgment does not equate to deliberate indifference. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5 th Cir.1999)(finding that pattern of neglect did not establish deliberate indifference); *Graves v. Hampton,* 1 F.3d 315, 319 (5 th Cir.1993)(negligent or mistaken medical treatment or judgment does not implicate Eighth Amendment); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5 th Cir.1991)(unsuccessful medical treatment, mere negligence, neglect or malpractice do not give rise to § 1983 cause of action). *See also Mayweather v. Foti,* 958 F.2d 91, 91 (5 th Cir.1992)(finding no

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

(Cite as: 2001 WL 283101, *3 (N.D.Tex.))

Eighth Amendment violation for occasional missed medications); *Callaway v.. Smith County,* 991 F.Supp. 801, 809 (E.D.Tex.1998)(finding that nineteen days of failing to give inmate medication or giving incorrect dosage showed only mistake or negligence). Jones also told Gianos, the jail's physician, that he was missing some of his medications, but Jones' own internal grievance reflects that Gianos told him that he would check into why Jones was not receiving his medications-which does not reflect an attitude of deliberate indifference on Gianos' part either. [FN8]

> FN8. Because deliberate indifference is a subjective standard, it must be evaluated on an individual basis and not collectively. *See Stewart,* 174 F.3d at 537.

*4 Likewise, there is no proof that inaccessibility to medications is an official Tarrant County jail policy (created by formal means or widespread custom) so as to hold the county or the hospital district liable, even if its staff could be considered deliberately indifferent in treating Jones and responding to his complaints. Jones provides no evidence that the individual employees he complains of possessed policy-making authority on behalf of the Defendants, while Defendants have provided evidence establishing the contrary. Defendants have provided competent summary judgment evidence that the jail, like any pharmacy, cannot keep all medications in stock, but regularly orders medications that inmates need from a pharmaceutical distribution center. These "specialty medications" are generally available within days of being ordered. There is no good explanation for why Jones was not given three of his prescription medications-although there is evidence that at least one of these medications was ordered, then shipped back to the supplier-but there is also no evidence that this oversight was the result or goal of any discernible official policy. [FN10]

> FN10. There is additional evidence that Jones' medical records were lost for at least some period of time in April 1999, which may also explain the prescription snafu, but again, this type of human error does not equate to deliberate indifference.

Jones additionally contends that his Eighth Amendment right to adequate medical care was compromised when he was not taken to JPS for timely follow-up visits between March 30, 1999 and

May 4, 1999. In his response to the motion for summary judgment, Jones complains that the guards who transported inmates for medical treatment routinely returned the prisoners' medical records to the booking desk for forwarding to the medical unit (as opposed to returning the records directly to the medical unit), and that this resulted in his records being misplaced, his follow-up appointment not being scheduled by the medical unit, and eventually, the loss of his right eye. But even Jones seems to recognize that the temporary loss of his records was a mix-up, rather than a commonplace event. The misplacement of the medical records may support a claim for negligence; however, negligence does not rise to the level of deliberate indifference and is insufficient to support a claim under Section 1983. *See Farmers,* 511 U.S. at 835-36, 114 S.Ct. at 1978 (discussing the Eighth Amendment requirement of a culpable mental state exceeding that of an ordinary lack of due care).

Jones also relies on an official policy notice, dated January 11, 1996 and issued by then-Sheriff David Williams, which states that a prisoner may not be removed from the jail unless (1) the prisoner has a life-threatening medical condition, and (2) certain other conditions defined by law are met. Defendants initially claim that this policy is no longer in effect simply because it was issued in 1996, but have not shown any evidence that the policy has in fact been changed. More persuasively, Defendants note that the notice simply does not apply to Jones' situation. As Defendants explain, the written policy was implemented by the Sheriff to prevent female inmates from having access to abortion services. Even more significant is the face of the notice itself, which specifically addresses the issue of inmates who desire to engage in elective medical procedures, including those fully paid for by the inmate or outside parties. [FN10] It does not appear that the 1996 notice has any relevance to Jones' situation. Further support is found in the fact that Jones was taken to the eye clinic on at least three occasions (March 15, March 30, and May 4, 1999) for medical reasons that do not appear to qualify as life-threatening. No evidence links Defendant's failure to return Jones for his follow-up appointments to the 1996 policy or any policy forbidding his removal from jail property, instead, all evidence of record indicates that it was a matter of the Defendants losing Jones' records for a time and neglecting to schedule him for these appointments. Jones' belated

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



arguments, being unsupported by the evidence, do not create a material fact question

> FN10. Defendants reinforce their interpretation with evidence that Jones' counsel has "resurrected" the 1996 policy statement from other lawsuits she has filed on behalf of female inmates who were seeking to terminate a pregnancy.

**\*5** Jones has failed to present a genuine issue of material fact regarding the deliberate indifference of county employees in denying him adequate health care, nor is there a material fact question regarding whether the alleged failure to provide him with adequate medical care was the result of official policy fairly attributable to the Defendants. Defendants have established their right to summary judgment on Jones' civil rights action based on the Eighth Amendment.

2. Due Process

In his response to Defendants' motion for summary judgment, Jones additionally complains of the grievance process at the Tarrant County Jail. He asserts that the system violates his due process rights guaranteed by the Fourteenth Amendment because his complaints about the medical department and his care were routed back to that department, [FN12] which summarily responded to the grievances without investigation. Jones' formal pleadings do not appear to fairly raise this issue, nor does the joint status report signed and filed by the parties indicate that infirmities in the jail's grievance process were being considered as an independent ground for Jones' civil rights complaint.

> FN12. As one of the deputies who processes the inmates grievances explained, a grievance regarding medical care is forwarded to the medical department because that unit has the medical experience and access to the inmates' medical records.

Moreover, even if construed as falling within the scope of Jones' complaint, the issue is meritless. Inmates do not have a constitutionally protected right to a grievance procedure or access to any such procedure voluntarily established by the State. *See Adams v. Rice,* 40 F.3d 72, 75 (4 th Cir.1994); *Flick v. Alba,* 932 F.2d 728, 729 (8 th Cir.1991); *Mann v. Adams,* 855 F.2d 639, 640 (9 th Cir.1988);; *Oladipupo v. Austin,* 104 F.Supp.2d

626, 638 (W.D.La.2000); *Brown v. Dodson,* 863 F.Supp. 284, 285 (W.D.Va.1994). When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's failure to comply with appropriate grievance procedures. *See Flick,* 932 F.2d at 729; *Oladipupo,* 104 F.Supp.2d at 638. Jones has taken advantage of his right to petition the courts for redress of his grievances regarding his medical care and does not contend that the county has interfered with that right of access. As a matter of law, he does not have a valid claim for violation of his constitutional rights based on allegations of an inadequate grievance procedure for inmates complaining about their medical care. Summary judgment is appropriate for this claim as well. FED.R.CIV.P.56(c).

IT IS ORDERED that Defendants' Motion for Summary Judgment is granted.

Not Reported in F.Supp.2d, 2001 WL 283101 (N.D.Tex.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

