Case No. 05-1225

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ROBERT HARRIS,

     Plaintiff-Appellee,

v.

MONTE GORE,

     Defendant-Appellant,

and

SCOTT TEETSEL,

     Defendant.

---

ON APPEAL FROM THE DECISION OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(Honorable John L. Kane)

Civil Action No. 98-K-2501

---

**APPELLEE'S RESPONSE BRIEF**

---

Kathryn Miller
MILLER & STEIERT, PC
1901 W. Littleton Blvd
Littleton, Colorado 80120
(303) 798-2525

Michael S. Freeman
Jacy T. Jasmer
(admission to the Tenth Circuit pending)
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80202
(303) 607-3500

ATTORNEYS FOR APPELLEE
ROBERT HARRIS

Pursuant to 10th Cir. R. 28.2(c)(4), ORAL ARGUMENT is requested

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

PRIOR OR RELATED APPEALS ........................................................ 1

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES .......................................................... 1

STATEMENT OF THE CASE ............................................................. 1

STATEMENT OF THE FACTS ........................................................... 2

    A.   Factual Background .......................................................... 2

    B.   Procedural Background .................................................... 6

SUMMARY OF ARGUMENT ........................................................... 7

STANDARD OF REVIEW ................................................................ 7

ARGUMENT ................................................................................... 8

I.    The District Court Correctly Ruled That, Taking The Facts In The Light
Most Favorable To Harris, His Eye Injury Was Serious And Gore Was
Deliberately Indifferent To His Need For Medical Treatment. ..................... 9

    A.   Harris' Eye Injury Was A Serious Medical Need. ........................... 11

    B.   Gore Does Not Challenge The District Court's Ruling Regarding
His Deliberate Indifference To The Substantial Risk Of Serious
Harm To Harris. .............................................................. 15

II.   The Right To Adequate Medical Care For A Serious Eye Injury Was
Clearly Established In 1998. ...................................................... 16

CONCLUSION ............................................................................. 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Creighton, 483 U.S. 635 (1987)............................................9, 16

Benter v. Peck, 825 F. Supp. 1411 (S.D. Iowa. 1993) ............................11, 17

Board v. Farnham, 394 F.3d 469 (7th Cir. 2005)..........................................16

Boyd v. Bell, 2002 WL 32349381 (E.D. Va. 2002)................................11, 18

Caldwell v. District of Columbia, 201 F. Supp. 2d 27 (D.D.C. 2001)..........14

Canell v. Multnomah County, 141 F. Supp. 2d 1046 (D. Or. 2001).......11, 18

Cooper v. Casey, 97 F.3d 914 (7th Cir. 1996) .................................11, 14, 17

Davis v. City of Greenville, 974 F. Supp. 884 (N.D. Miss. 1997)..........11, 18

Davis v. Oklahoma Department of Corrections,
516 F. Supp. 5 (W.D. Okla. 1980)...........................................................11, 17

Ervin v. Mangum,
127 F.3d 1099, 1997 WL 664606 (4th Cir. W. Va. 1997) .....................11, 18

Farmer v. Brennan, 511 U.S. 825 (1994) ......................................................10

Figueroa v. Vose, 874 F. Supp. 500 (D.R.I. 1994).................................11, 18

Freeman v. Sheahan, 1996 WL 18883 (N.D. Ill. 1996) .........................11, 18

Frohmader v. Wayne, 958 F.2d 1024 (10th Cir. 1992) .................................13

Garrett v. Stratman, 254 F.3d 946 (10th Cir. 2001) ..................................9, 15

Jones v. Van Fleit, 49 Fed. Appx. 626 (2002).........................................11, 18

Jones v. Williams, 2001 WL 283101 (N.D. Tex. 2001)..........................11, 18

Koehl v. Dalsheim, 85 F.3d 86 (2d Cir. 1996) .......................................11, 17

Mata v. Saiz, 427 F.3d 745 (10th Cir. 2005) ......................................7, 15, 17

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986)..........................................................................................8

Olsen v. Layton Hills Mall,
312 F.3d 1304 (10th Cir. 2002) ..........................................7, 8, 9, 10, 13, 15

Saucier v. Katz, 533 U.S. 194 (2001)...........................................................8, 9

Simkins v. Bruce, 406 F.3d 1239 (10th Cir. 2005) ...................................8, 16

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1331..............................................................................................1

F.R.C.P. 56........................................................................................................8

## PRIOR OR RELATED APPEALS

Counsel is not aware of any prior or related appeals.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court exercised jurisdiction over the Second Amended Complaint filed by Plaintiff-Appellee Robert Harris ("Harris") under 28 U.S.C § 1331.  For the reasons stated in Harris' Motion to Dismiss Interlocutory Appeal For Lack Of Jurisdiction, this Court does not have appellate jurisdiction.  This appeal should be dismissed for lack of jurisdiction.

## STATEMENT OF THE ISSUES

I.      Did the District Court err in concluding that, viewing the evidence in the light most favorable to Harris, Harris was suffering from a serious medical need?

II.     For purposes of qualified immunity, was it clearly established in 1998 that a serious eye injury constituted a serious medical need?

## STATEMENT OF THE CASE

This case arises from the denial of medical care to Harris, a Summit County Jail inmate, after Deputy Scott Teetsel ("Teetsel") sprayed Harris in the eye with pepper spray.  Harris alleges that Teetsel and the Defendant-Appellant, Captain Monte Gore ("Gore"), violated Harris' Eighth and Fourteenth Amendment rights to be free from excessive force and to receive adequate medical care.  Harris alleges

1

that Teetsel violated these rights when he used pepper spray on Harris in a non-threatening situation.  Harris also alleges that both Teetsel and Gore violated these rights when they failed to provide Harris with the medical treatment necessary for the serious eye injury that resulted from Teetsel's use of pepper spray.

On April 6, 2005, the District Court denied Gore and Teetsel's motions for summary judgment on Harris' claims.  Teetsel did not appeal; Gore did.  This Court should dismiss Gore's appeal for lack of subject matter jurisdiction.  In the alternative, this Court should affirm the District Court's denial of summary judgment.

**STATEMENT OF THE FACTS**

**A.  Factual Background**

Taken in the light most favorable to Harris, the facts in the present case are as follows:

In June of 1998, Teetsel sprayed Harris in the right eye with oleoresin capsicum (pepper spray) while Harris was incarcerated in the Summit County Jail in Breckenridge, Colorado.  See Appellant's Appendix ("Aplt's App.") at 158.  At the time, Harris was questioning an order from Teetsel.  Aplt's App. at 158.  Harris was not physically threatening Teetsel or anyone else.  See Aplt's App. at 158-59, 185-86.

After Teetsel sprayed Harris, Teetsel handcuffed Harris and took Harris to a shower in the jail's booking area.  See Aplt's App. at 159, 188.  Teetsel had to guide Harris to the shower because Harris could not see after being sprayed.  Aplt's App. at 159.  When Teetsel placed Harris in the shower to wash out his eyes, the water was warm at first, but then became hot.  Aplt's App. at 160.  Teetsel had been trained on the use of pepper spray.  Aplt's App. at 182.  He had been trained to use cold, rather than warm or hot water.  Aplt's App. at 182.  He knew that warm water actually worsened the effect of the pepper spray on the victim.  Aplt's App. at 182.  The pepper spray manufacturer's written warning states that the contaminated areas should be flushed with large quantities of cool water.  It also states in bold and capital letters:

**FAILURE TO FOLLOW THESE INSTRUCTIONS MAY RESULT IN FIRST OR SECOND DEGREE BURNS, SEVERE SKIN IRRITATION, DEPIGMENTATION OR OTHER SKIN INJURY.**

See Aplt's App. at 141.

When Teetsel took Harris out of the shower, Harris told him he could not breathe or see.  Aplt's App. at 160.  Saliva was coming out of Harris' mouth and nose, and Harris asked to go to the hospital.  Aplt's App. at 160.  Teetsel refused this request.  Aplt's App. at 161.  Harris' face remained red and swollen well after the initial burning effects of the pepper spray wore off in approximately 45 minutes.  Aplt's App. at 161-62.  Harris could not tolerate light in his right eye and

he had to keep it covered with a wet towel to alleviate the pain.  Aplt's App. at
162.  His eye remained red for three or four days.  Aplt's App. at 162.

Almost immediately after the pepper spray incident, Harris sent multiple
written requests for medical treatment ("kites") to Gore, who was Teetsel's
supervisor.  Aplt's App. at 166.  Harris communicated to Gore that he had blurred
vision, discoloration in the skin above his right eye, and that a dark spot formed in
the white section of his eye.  Aplt's App. at 169.  Gore did not grant these requests
for treatment.  Harris even asked other deputies for permission to go to the
hospital.  Aplt's App. at 165.  The other deputies deferred to Teetsel.  Aplt's App.
at 165.

On or about June 25, 1998, a week after the incident, Harris met with Gore
and Teetsel to discuss the pepper spray incident.  Aplt's App. at 167.  Gore
declined to investigate the incident, explaining that he was "sticking by his
officers."  Aplt's App. at 167.  Gore threatened to retaliate against Harris by taking
away Harris' commissary privileges if Harris pursued any action regarding the
incident.  Aplt's App. at 167.  Gore had previously instructed Teetsel to file
obstruction of justice charges against Harris in connection with the incident.
Aplt's App. at 193.  At the end of the meeting, Gore told Teetsel to file any

additional charges against Harris that he "could come up with on him."[1]  Aplt's

App. at 168.  Gore also continued to deny Harris medical treatment.  See Aplt's

App. at 168-69.

The Summit County Sheriff's Office Operational Policy ( "Summit County

Operational Policy") regarding the use of pepper spray (oleoresin capsicum, or

"O.C.") states that "any time a deputy uses O.C. for purpose [sic] of subject

control, the officer, if necessary, will ensure that the subject be seen by

professional medical personnel."  Aplt's App. at 145.  The Summit County jail

contracts with a third party for in-house medical and dental care.  Aplt's App. at

179.  A medical center is located a few minutes away from the jail, and a trauma

center is located in nearby Frisco, Colorado.  Aplt's App. at 179.  Despite the

Summit County Operational Policy and the accessibility of health facilities, Harris

never received the medical care he requested.

As a result of the pepper spray incident, Harris now has discoloration of the

skin above his right eye, a black scar on the white of his right eye, blurry vision,

and is unable to watch television for the same amount of time as he could prior to

---

[1] Summit County Sheriff Joe Morales ("Morales") subsequently dismissed the
obstruction of justice charge against Harris and agreed to investigate the pepper
spray incident, but did not grant Harris' request for medical attention.  See Aplt's
App. at 179, 183.

the incident.  Aplt's App. at 163.  Harris also suffers emotional distress in the form of insomnia, fear, and worry.  Aplt's App. at 164.

## B.  Procedural Background

Harris' Second Amended Complaint alleges violations of his Eighth and Fourteenth Amendment rights to be free from the use of excessive force ("the "excessive force claim") against Teetsel.  See Aplt's App. at 15-23.  It alleges Eighth Amendment claims against both Teetsel and Gore for refusing to provide Harris with adequate medical care (the "denial of medical care claims").  See Aplt's App. at 15-23.  The Second Amended Complaint also alleged several constitutional claims against Morales and Summit County.  See Aplt's App. at 15-23.

All defendants moved for summary judgment on the basis of qualified immunity.  See Aplt's App. at 24-31, 59-115.  On April 6, 2005, the District Court granted summary judgment in favor of Morales and Summit County on Harris' claims against those defendants.  See Aplt's App. at 214-20.  The District Court denied Gore and Teetsel's motions for summary judgment on the excessive force and denial of medical care claims.  See Aplt's App. at 214-20.  The District Court held that as to the denial of medical care claims, Harris' testimony regarding his eye injuries, his requests for treatment, the manufacturer's warning label on the pepper spray, Gore's statements regarding "sticking by his officers," and Gore's

threats against Harris, were sufficient to create a triable issue as to whether Gore and Teetsel were deliberately indifferent to Harris' serious medical need.  <u>See</u> Aplt's App. at 218-220.

On May 6, 2005, Gore filed an interlocutory appeal of the denial of his summary judgment motion.  <u>See</u> Aplt's App. 222-23.  Teetsel did not appeal the District Court's Order.  Proceedings in the District Court on the claims against Teetsel have been stayed pending resolution of this appeal.  Harris has moved to dismiss the appeal for lack of subject matter jurisdiction.  Harris' Motion to Dismiss was submitted to the panel on October 17, 2005.

## SUMMARY OF ARGUMENT

The District Court correctly denied Gore's motion for summary judgment. Harris' constitutional right to receive medical care for a serious eye injury was clearly established at the time of the pepper spray incident.  Taken in the light most favorable to Harris, the evidence shows that Harris was suffering from a serious eye injury.  Gore has not challenged on appeal the District Court's ruling regarding his deliberate indifference to Harris' need for medical treatment.  This Court should affirm the District Court's denial of summary judgment.

## STANDARD OF REVIEW

This Court reviews the denial of summary judgment on a qualified immunity defense de novo.  <u>Mata v. Saiz</u>, 427 F.3d 745, 749 (10th Cir. 2005); <u>Olsen v.</u>

7

Layton Hills Mall, 312 F.3d 1304, 1311 (10th Cir. 2002).  Summary judgment shall be granted where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  F.R.C.P. 56(c).  The responding party cannot defeat summary judgment simply through allegations or denials of fact in the pleadings.  F.R.C.P. 56(e).  Rather, the responding party must "set forth specific facts showing that there is a genuine issue for trial."  F.R.C.P 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

When a defendant raises a qualified immunity defense on summary judgment, the "defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense."  Olsen, 312 F.3d at 1312.  If there is an unresolved issue of fact relevant to the qualified immunity analysis, the motion for summary judgment based on qualified immunity should be denied.  Id.

## ARGUMENT

This Court's analysis of qualified immunity requires two steps.  Simkins v. Bruce, 406 F.3d 1239, 1241 (10th Cir. 2005).  The Court must first ask if the facts, taken in the light most favorable to the plaintiff, show a violation of the plaintiff's constitutional right.  Id.; see also Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Court must next inquire if the right was clearly established.  Id.  To be considered

clearly established, a right must be defined in a "particularized, and hence more relevant, sense." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  When an official is deliberately indifferent to a serious medical need, the "contours of the right" only need to be clear enough for a reasonable official to understand that what he is doing violates that right.  <u>See</u> <u>Saucier</u>, 533 U.S. at 201-02;  <u>Anderson</u>, 483 U.S. at 640.

Gore is not entitled to qualified immunity because: (1) taken in the light most favorable to Harris, the evidence shows that Gore was deliberately indifferent to Harris' serious medical need; and (2) the right to adequate medical care for a serious eye injury was clearly established in 1998, when the pepper spray incident occurred.

**I.     The District Court Correctly Ruled That, Taking The Facts In The Light Most Favorable To Harris, His Eye Injury Was Serious And Gore Was Deliberately Indifferent To His Need For Medical Treatment.**

As noted above, a prisoner states an Eighth Amendment claim for denial of medical care if he "alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Olsen</u>, 312 F.3d at 1315.  To demonstrate such a violation, the inmate must satisfy an objective and a subjective element.  <u>Garrett v. Stratman</u>, 254 F.3d 946, 949 (10th Cir. 2001).  The objective element is satisfied if the plaintiff's medical need is sufficiently serious.  <u>Id</u>.  A medical need is sufficiently serious if the condition has been diagnosed by a doctor

as needing treatment or is so obvious that even a lay person would easily recognize the need for medical attention.  Id.

The subjective element is satisfied when an officer is deliberately indifferent to that serious medical need.  Id.  An officer is deliberately indifferent when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and also draws the inference.  Id.  A fact finder can conclude that an official knew of a substantial risk from the fact that the risk was obvious.  Farmer v. Brennan, 511 U.S. 825, 842 (1994).  If the evidence shows that the official was exposed to information such that he "must have known" about the risk, then it is sufficient to allow a fact finder to find in favor of the prisoner.  Id. at 842-43.

If there are material facts in dispute as to the existence of either a serious medical need or deliberate indifference, the court must deny summary judgment. Olsen, 312 F.3d at 1315-16; see also Farmer, 511 U.S. at 842 (stating that the requisite knowledge of substantial risk is a question of fact).  The evidence in the present case easily created a triable issue as to both the objective and subjective elements of Harris' denial of medical care claim.  The District Court correctly denied Gore's summary judgment motion.

### A.  Harris' Eye Injury Was A Serious Medical Need.

Numerous courts have recognized that a prisoner's eye injury represents a serious medical need.  See e.g., Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (eye glasses and eye condition causing headaches and deterioration of sight); Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996) (burning sensation in the eyes and skin); Figueroa v. Vose, 874 F. Supp. 500, 506 (D.R.I. 1994) (surgery and post-operative care for an eye condition); Benter v. Peck, 825 F. Supp. 1411, 1416-17 (S.D. Iowa 1993) ("very poor vision"); Davis v. Oklahoma Dep't. of Corrections, 516 F. Supp. 5, 7 (W.D. Okla. 1980) (blindness caused by consuming methyl alcohol); Freeman v. Sheahan, 1996 WL 18883, at * 6 (N.D. Ill. 1996) (temporary loss of sight); Ervin v. Mangum, 127 F.3d 1099, 1997 WL 664606, at * 6 (4th Cir. W. Va. 1997) (eyes swollen shut); see also Davis v. City of Greenville, 974 F. Supp. 884, 886 (N.D. Miss. 1997) (right eye swollen shut and left eye swollen almost shut).[2]

The District Court correctly concluded that, taking the facts in the light most favorable to Harris, a lay person such as Gore should easily have recognized

_____

[2] See also Canell v. Multnomah County, 141 F. Supp. 2d 1046, 1057 (D. Or. 2001) ("[S]evere eye injuries or legal blindness"); Boyd v. Bell, 2002 WL 32349381, at * 4 (E.D. Va. 2002) (blurred vision); Jones v. Van Fleit, 49 Fed. Appx. 626, 628 (2002) (blurred vision and a partial retinal tear); Jones v. Williams, 2001 WL 283101, at *2 n.5 (N.D. Tex. 2001) (pain in the plaintiff's right eye, which was swollen shut).

Harris' need for medical treatment. The Summit County Operational Policy on pepper spray expressly provided that deputies, if necessary, must ensure that an inmate sprayed with pepper spray is seen by professional medical personnel. <u>See</u> Aplt's App. at 145. The label on the pepper spray Teetsel used, moreover, warned that failure to flush with cold water "may result in first or second degree burns, severe skin irritation, depigmentation or other skin injury." Aplt's App. at 141. Contrary to these instructions, Harris was handcuffed and placed into a hot shower. Aplt's App. at 159-60. Harris' face was red and swollen, even after the effects of the pepper spray wore off. Aplt's App. at 162. The skin above his right eye was discolored. Aplt's App. at 163. He could not tolerate light. Aplt's App. at 162. Harris had significant pain. Aplt's App. at 162. He had blurry vision. Aplt's App. at 163. A dark scar formed on his eye. Aplt's App. at 163. He made multiple requests for medical attention to Gore immediately following the incident, all of which were denied. Aplt's App. at 166.

All of these facts should easily have led a lay person to recognize that Harris' eye injury warranted medical attention.[3]

---

[3] Gore implies that Harris' symptoms disappeared by the time Harris complained to Gore, a claim that Harris disputes. <u>See</u> Aplt's Br. at 12. Harris's eye remained red for three or four days, while he was writing kites to Gore. Aplt's App. at 162. The black scar and discoloration on Harris' eye remain even today. Aplt's App. at 163, 169. As noted above, on summary judgment, Harris' version of the facts must be taken as true.

Gore argues that summary judgment should have been granted because Harris has not produced any medical or ophthalmologic testimony to support his allegation of an eye injury. Gore's attempt to argue about the sufficiency of the evidence is ironic. In opposing Harris' motion to dismiss this appeal, Gore argued that this appeal only requires the Court to apply the law to an undisputed set of facts. If Gore believes that the Court must consider the sufficiency of the evidence, this appeal should be dismissed. <u>See</u> Appellee's Mot. to Dismiss Interlocutory Appeal for Lack of Jurisdiction at 8-11.

Moreover, Gore's argument ignores the standard for a "serious medical need," which is satisfied if the plaintiff's condition has been diagnosed by a doctor as needing treatment *or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."* <u>Olsen</u>, 312 F.3d at 1312 (emphasis added). The District Court ruled that Gore "should have recognized the need for medical attention in Plaintiff's case without a medical diagnosis . . . ." Aplt's App. at 219.

<u>Frohmader v. Wayne</u>, 958 F.2d 1024 (10th Cir. 1992), does not require a different result. In <u>Frohmader</u>, the plaintiff alleged that he suffered from claustrophobia and agoraphobia. <u>Frohmader</u>, 958 F.2d at 1028. Three of Frohmader's treating mental health professionals, however, denied treating him for claustrophobia or agoraphobia. <u>See</u> <u>id</u>. Frohmader did not even indicate by

13

allegation or deposition testimony, much less medical evidence, how agoraphobia was implicated by the defendants' actions.  See id.  Harris, by contrast, suffered a ***physical*** injury.  See Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996) (after prison guards beat and maced the plaintiffs, causing cuts, pain, and a burning sensation in their eyes and skin, "plaintiffs were not required to call a medical expert as a witness" to prevail on claims for denial of medical care); Caldwell v. District of Columbia, 201 F. Supp. 2d 27, 36 (D.D.C. 2001) (stating that "no medical or other expert testimony was required to support the jury's verdict" on claims that conditions of imprisonment resulted in a substantial risk of serious harm to the plaintiff).

The severity of Harris' injury, in fact, is supported by objective evidence. Harris still has a dark scar on the white of his eye and discoloration of the skin above that eye, neither of which were present prior to the pepper spray incident. Aplt's App. at 163.  Harris was not required to present medical testimony about these injuries.  Cooper, 97 F.3d at 916-17; Caldwell, 201 F. Supp. 2d at 36.

Gore also argues that Harris' claim requires ophthalmologic testimony because it is "analogous to cases involving a delay in medical care."  Aplt's Brief at 13.  Harris has not alleged that Gore merely delayed providing him with medical care.  Gore *outright denied* medical care to Harris, in violation of the Eighth

Amendment.[4]  The evidence easily creates a triable issue of fact as to the severity

of Harris' eye injury.

## B. Gore Does Not Challenge The District Court's Ruling Regarding His Deliberate Indifference To The Substantial Risk Of Serious Harm To Harris.

Gore has not challenged on appeal the district court's ruling that, viewing

the evidence in the light most favorable to Harris, Gore was "aware of facts from

which the inference could be drawn that a substantial risk of serious harm

exist[ed]" and also drew that inference.  Olsen, 312 F.3d at 1312.

Gore does, however, suggest (in another part of his brief) that he was not

informed by Harris of the full extent of his injuries.  See Aplt's Br. at 17 (asserting

that there is a "significant difference between the symptoms displayed to Gore"

and "the harm now alleged by Plaintiff").  This is simply incorrect.  Both in written

requests, and during a face-to-face meeting, Harris informed Gore in 1998 that he

was suffering from blurred vision, skin discoloration above his eye, and that a dark

spot had formed in the white of his eye.  Aplt's App. at 166, 169.

---

[4] In any case, Harris also has established an Eighth Amendment violation for delay
in providing medical care.  Delay constitutes an Eighth Amendment violation
where the plaintiff shows that the delay resulted in "lifelong handicap, permanent
loss, or considerable pain."  Mata, 427 F.3d at 751; Garrett, 254 F.3d at 950.
As described above, Harris did suffer considerable pain in the days after the pepper
spray incident.  Aplt's App. at 162.  He also has continuing blurry vision,
apparently permanent discoloration of the skin above his right eye, and a black scar
on the white of his right eye.  Aplt's App. at 163.

Moreover, there is ample evidence of Gore's deliberate indifference.  In addition to Harris' multiple requests for medical attention to his eye, the Summit County Operational Policy expressly contemplated that medical treatment might be necessary after a prisoner was sprayed with pepper spray.  Aplt's App. at 145-46, 163, 166-169.  Both Gore's training and the manufacturer's instructions warned of the risks of using warm or hot water to flush clean areas contaminated with pepper spray.  Aplt's App. at 141, 182.  Moreover, as the trial court noted, Gore stated that he was "sticking by his officers" and threatened to retaliate against Harris.  Aplt's App. at 219.  Based on this evidence, a fact finder can easily conclude that Gore chose knowingly to disregard the substantial risk of harm to Harris.

## II.    The Right To Adequate Medical Care For A Serious Eye Injury Was Clearly Established In 1998.

Harris' right to medical care for a serious eye injury was clearly established in 1998.  For a right to be clearly established, the exact same action does not have to have been held unlawful, nor precisely the same condition held serious.  See Anderson, 483 U.S. at 639-640 (the qualified immunity analysis turns on the "objective legal reasonableness of the action. . . . This is not to say that an official action is protected . . . unless the very action in question has previously been held unlawful . . . .");  Simkins v. Bruce, 496 F.3d 1239, 1243 (10th Cir. 2005); see also Board v. Farnham, 394 F.3d 469, 482-84 (7th Cir. 2005) (holding that the right to oral hygiene products was clearly established because dental care is a "basic

human need" that is analogous to the established right to a nutritionally adequate diet."). Harris is not required to cite cases specifically holding that "blurred vision and skin discoloration" are a serious medical need. Aplt's Br. at 2. Gore could not have reasonably believed in 1998 that he could deny medical treatment to Harris for a serious eye injury without violating the Eighth Amendment.

Gore is incorrect in suggesting that this case involves a murky "undefined border" where there was little or no applicable case law. Aplt's App. at 20.[5] Numerous courts before 1998 had ruled that serious eye conditions and injuries can constitute serious medical needs for which inmates are entitled to medical treatment. See e.g., Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (eye glasses and eye condition causing headaches and deterioration of sight); Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996) (burning sensation in the eyes and skin); Figueroa v. Vose, 874 F. Supp. 500, 506 (D.R.I. 1994) (surgery and post-operative care for an eye condition); Benter v. Peck, 825 F. Supp. 1411, 1416-17 (S.D. Iowa 1993) ("very poor vision"); Davis v. Oklahoma Dep't. of Corrections, 516 F. Supp. 5, 7

---

[5] Gore also argues that this Court's decision in Mata v. Saiz, 427 F.3d 745 (10th Cir. 2005), rendered the state of the law unclear by requiring that the seriousness of an injury be judged by "the harm alleged by the plaintiff rather than the symptoms displayed to the prison official." Aplt's Br. at 9-10, 16-17. Mata made no such ruling. In fact, Mata did not address the "clearly established" portion of the qualified immunity analysis at all. 427 F.3d at 749 and n. 1. Mata simply ruled that the objective severity of a plaintiff's injury can be assessed by considering either the symptoms, or the actual harm, or both. 427 F.3d at 753. In this case, Harris' symptoms were the same as the harm he suffered.

(W.D. Okla. 1980) (blindness caused by consuming methyl alcohol); <u>Freeman v. Sheahan</u>, 1996 WL 18883, at * 6 (N.D. Ill. 1996) (temporary loss of sight); <u>Ervin v. Mangum</u>, 127 F.3d 1099, 1997 WL 664606, at * 6 (4th Cir. W. Va. 1997) (eyes swollen shut); <u>see</u> <u>also</u> <u>Davis v. City of Greenville</u>, 974 F. Supp. 884, 886 (N.D. Miss. 1997) (right eye swollen shut and left eye swollen almost shut).[6]

Taking the facts most favorably to Harris, the evidence showed that he had suffered from a serious eye injury, and that Gore was deliberately indifferent to that injury. Gore could not have reasonably believed in 1998 that he could deny medical treatment to Harris for a serious eye injury without violating the Eighth Amendment. The District Court correctly denied Gore's motion for summary judgment.

## CONCLUSION

For the reasons stated above, this Court should affirm the District Court's denial of Gore's Summary Judgment Motion.

---

[6] <u>See</u> <u>also</u> <u>Canell v. Multnomah County</u>, 141 F. Supp. 2d 1046, 1057 (D. Or. 2001) ("[S]evere eye injuries or legal blindness"); <u>Boyd v. Bell</u>, 2002 WL 32349381, at * 4 (E.D. Va. 2002) (blurred vision); <u>Jones v. Van Fleit</u>, 49 Fed. Appx. 626, 628 (2002) (blurred vision and a partial retinal tear); <u>Jones v. Williams</u>, 2001 WL 283101, at *2 n.5 (N.D. Tex. 2001) (pain in the plaintiff's right eye, which was swollen shut).

18

Oral argument would assist the Court in understanding the qualified

immunity and Eighth Amendment issues raised by the parties' arguments.


s/  Michael S. Freeman
Michael S. Freeman, #30007
Jacy T. Jasmer, #36717
(admission to the Tenth Circuit pending)
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
Telephone:  (303) 607-3500
Facsimile:    (303) 607-3600

Kathryn Miller
Miller & Seigert, PC
1901 W Littleton Blvd
Littleton, CO 80120

ATTORNEYS FOR PLAINTIFF-
APPELLEE

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th of April, 2006, a true and correct copy of the foregoing **APPELLEE'S RESPONSE BRIEF** was served via First-Class U.S. Mail, postage pre-paid, to the following

Josh A. Marks, Esq.
Melanie B. Lewis, Esq.
Berg Hill Greenleaf & Ruscitti LLP
1712 Pearl Street
Boulder, CO 80302

Robert M. Liechty, Esq.
Cross Sands & Sares
400 S Colorado Blvd, Suite 900
Glendale, CO 80246

Kathryn Miller, Esq.
Miller & Steiert, PC
1901 W Littleton Blvd
Littleton, CO 80120

Mr. Robert Harris
Register No. 43785
Colorado Correctional Center
P.O. Box 4020
Golden, CO 80401-0020

s/ Gregory Apt
Gregory Apt

20

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,905 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated:        April 19, 2006

s/  Michael S. Freeman
Michael S. Freeman, #30007
Jacy T. Jasmer, #36717
(admission to the Tenth Circuit pending)
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
Telephone:  (303) 607-3500
Facsimile:    (303) 607-3600

Kathryn Miller
Miller & Seigert, PC
1901 W Littleton Blvd
Littleton, CO 80120

ATTORNEYS FOR PLAINTIFF-APPELLEE

## CERTIFICATE OF DIGITAL SUBMISSION

Counsel for Plaintiff-Appellee Robert Harris certify that all required privacy redactions have been made, and with the exceptions of any required redactions, every document submitted in Digital Form or scanned PDF format is an exact copy of the written document filed with the Clerk, and the digital submissions have been scanned for viruses with the Trend Micro OfficeScan, Version 7.0, updated through April 18, 2006, and according to the program are free of viruses.

I further certify that I caused an original and seven copies of **APPELLEE'S RESPONSE BRIEF** and the attached Addendum, to be filed in paper format with the Court via Hand Delivery.  Copies are being submitted in PDF form (Response in native PDF, Addendum in scanned PDF format) by electronic mail to the following on the 19th day of April, 2006:

esubmission@ca10. uscourts.gov

rliechty@crossliechty.com

katym@m-s-lawyers.com

s/  Michael S. Freeman
Michael S. Freeman, #30007
Jacy T. Jasmer, #36717
(admission to the Tenth Circuit pending)
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
Telephone:  (303) 607-3500
Facsimile:   (303) 607-3600

Kathryn Miller
Miller & Seigert, PC
1901 W Littleton Blvd
Littleton, CO 80120

ATTORNEYS FOR PLAINTIFF-APPELLEE