Case No. 05-1225

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ROBERT HARRIS

Plaintiff-Appellee,

v.

MONTE GORE,

Defendant-Appellant,

and

SCOTT TEETSEL,

Defendant.

# REPLY BRIEF OF DEFENDANT-APPELLANT MONTE GORE

On Appeal from the United States District Court for the District of Colorado, Civil Action No. 98-K-2501, the Honorable John L. Kane

May 8, 2006

JOSH A. MARKS, Esq.
MELANIE BAILEY LEWIS, Esq.
of BERG HILL GREENLEAF &
RUSCITTI LLP
1712 Pearl Street
Boulder, Colorado 80302
(303) 402-1600
*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT IN REPLY ........ 2

I. PLAINTIFF SELECTIVELY OMITS UNDISPUTED FACTS FROM HIS RESPONSE ........ 2

II. THERE IS NO EVIDENCE THAT PLAINTIFF'S CONSTITUTIONAL RIGHT TO ADEQUATE MEDICAL CARE WAS VIOLATED BECAUSE, TAKEN IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFF, THE FACTS DO NOT DEMONSTRATE THE EXISTENCE OF A SERIOUS MEDICAL NEED ........ 3

III. GORE IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW REGARDING THE ALLEGED VIOLATION WAS NOT CLEARLY ESTABLISHED AT THE TIME IT OCURRED ........ 11

A. The District court failed to analyze the "clearly established" prong of the qualified immunity test ........ 11

B. At the time of the alleged violation, the law regarding the objective component of the *Estelle* test was not clearly established ........ 12

CONCLUSION ........ 14

CERTIFICATE OF SERVICE ........ 16

# TABLE OF AUTHORITIES

Cases

Anderson v. Creighton, 483 U.S. 635 (1987) .......................................................14

Benter v. Peck, 825 F. Supp. 1411 (S.D. Iowa 1993) ...........................................4

Boyd v. Bell, 2002 WL 32349381 (E.D. Va. 2002)...........................................6, 7

Brosseau v. Haugen, 543 U.S. 194 (2004) .........................................................13

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...................................................7, 8

Cooper v. Casey, 97 F.3d 914 (7th Cir. 1996).....................................................5, 7

Davis v. City of Greenville, Miss., 974 F. Supp. 884 (N.D. Miss. 1997)................5

Davis v. Oklahoma Dep't of Corrections, 516 F. Supp. 5 (W.D. Okla. 1980) .........6

Ervin v. Mangum, 127 F.3d 1099, 1997 WL 664606 (4th Cir. 1997).......................6

Estelle v. Gamble, 429 U.S. 97 (1976)........................................ 1, 3, 5, 11, 12, 13

Figueroa v. Rose, 874 F. Supp. 500 (D.R.I. 1994) .................................................4

Freeman v. Sheahan, 1996 WL 18883 (N.D. Ill. 1996)..........................................5

Frohmader v. Wayne, 958 F.2d 1024 (10th Cir. 1992)...........................................8

Hall v. Bellmon, 935 F.2d 1006 (10th Cir. 1991)....................................................7

Hunt v. Uphoff, 199 F.3d 1220 (10th Cir. 1999) ..................................................3, 4

Jones v. Van Fleit, 49 Fed. Appx. 626 (7th Cir. 2002) ..........................................5

Jones v. Williams, 2001 WL 283101 (N.D. Tex. 2001)..........................................5

Kayser v. Caspari, 16 F.3d 280 (8th Cir. 1994) ............................................7, 8, 9

Koehl v. Dalsheim, 85 F.3d 86 (2d Cir. 1996) ..................................................4

Lopez v. LeMaster, 172 F.3d 756 (10th Cir. 1999) ............................................1

Mata v. Saiz, 427 F.3d 745 (10th Cir. 2005) ..........................................3, 10, 13

Mullen v. Smith, 738 F.2d 317 (8th Cir. 1984) .................................................12

Olsen v. Layton Hills Mall, 312 F.3d 1304 (10th Cir. 2002) ................................1

Ramos v. Lamm, 639 F.2d 559 (10th. Cir. 1980) ................................................3

Samuels v. Hawkins, 157 F.3d 557 (8th Cir. 1998) .............................................7

Shabazz v. Barnauskas, 790 F.2d 1536 (11th Cir. 1986) .....................................9

Warren v. State of Mo., 995 F.2d 130 (8th Cir. 1993) .......................................10

Wesson v. Oglesby, 910 F.2d 278 (5th Cir. 1990)..........................................9, 12

Workman v. Jordan, 32 F.3d 475 (10th Cir. 1994).......................................11, 12

**INTRODUCTION**

When the defense of qualified immunity is raised in a motion for summary judgment, the Court must engage in a two-step analysis to resolve the motion: (1) taken in the light most favorable to the plaintiff, do the facts show that an official violated a constitutional right; and (2) if so, was the right clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313 (10th Cir. 2002). The constitutional right at issue here is Plaintiff's Eighth Amendment right to adequate medical care, which is violated when an official is deliberately indifferent to a prisoner's serious medical needs.[1] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In his Response, in contending that the harm Plaintiff alleges constitutes a serious medical need under *Estelle*, Plaintiff cites a plethora of distinguishable Eighth Amendment cases that relate to the current case only in that they generally involve allegations of various types and degrees of eye injuries. (Response Brief at 11.) Neither those cases nor the facts of this case, however, elevate Plaintiff's alleged harm to the level of a serious medical need, and the District Court erred in concluding otherwise. The District Court also erred in denying Defendant Gore's motion for summary judgment without even mentioning, let alone discussing, the second step of the qualified immunity analysis. Assuming Plaintiff can show that his constitutional rights were violated, which he cannot, he has not shown that those rights were clearly established. This Court accordingly should reverse the District

---

[1] As noted in Appellant's Opening Brief, although pretrial detainees like Plaintiff are protected under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, the court engages in an analysis identical to that applied in Eighth Amendment cases in determining whether a detainee's rights were violated. *Olsen*, 312 F.3d at 1315 (citing *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)).

Court's order denying summary judgment or, in the alternative, should remand the case to the District Court in order for the District Court to determine whether the constitutional rights allegedly violated were clearly established.

## ARGUMENT IN REPLY

### I. PLAINTIFF SELECTIVELY OMITS UNDISPUTED FACTS FROM HIS RESPONSE.

Plaintiff makes much of the fact that on summary judgment his version of the facts must be taken as true. However, in the Statement of Facts in his Response Brief, Plaintiff selectively omitted relevant information supported by Plaintiff's own deposition testimony with regard to what happened immediately after Deputy Teetsel sprayed Plaintiff with the pepper foam. Specifically, Plaintiff states that the water in the shower he was placed in was warm at first and then became hot. (Response Brief at 3.) After noting that the pepper foam manufacturer's warning instructs that contaminated areas should be flushed with cool water, Plaintiff skips over what happened next and goes directly to his request for and the denial of medical treatment. (*Id.*) Plaintiff fails to mention that Deputy Teetsel took Plaintiff out of the shower as soon as Plaintiff informed him that the water had become hot; that a trustee then poured a bucket of cold water over Plaintiff's head; and that Plaintiff was then taken to an isolation cell where he rinsed his eyes in a sink of cold water. (Aplt. App. at 43.)

Defendant Gore also reiterates the following pertinent facts. The burning effects of the pepper foam wore off in approximately 45 minutes. (*Id.* at 161.) The residual pain from some mild swelling (less than the swelling from a bee sting) was alleviated when

Plaintiff covered his eye with a wet towel. (*Id.*) The redness and swelling subsided in about 3 days. (*Id.* at 162.) Plaintiff complains of skin discoloration above his right eye, a spot on his right eye, and blurred vision in his right eye that affects his ability to watch television for prolonged periods of time. (*Id.* at 163.) Plaintiff testified in his deposition, which was taken October 24, 2000, that he had recently seen a doctor concerning his eye and that she "gave me some eyedrops to resolve the tear ducts that's been damaged." (*Id.*) Plaintiff has not produced any medical documentation from this or any other doctor concerning any damage, permanent or otherwise, to his right eye.[2]

**II. THERE IS NO EVIDENCE THAT PLAINTIFF'S CONSTITUTIONAL RIGHT TO ADEQUATE MEDICAL CARE WAS VIOLATED BECAUSE, TAKEN IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFF, THE FACTS DO NOT DEMONSTRATE THE EXISTENCE OF A SERIOUS MEDICAL NEED.**

The objective component of the *Estelle* test requires evidence that the medical need in question be "sufficiently serious"—that is, "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). Whether a medical need is sufficiently serious depends on the harm alleged by the plaintiff rather than the symptoms displayed to the prison official at the time medical treatment was denied or delayed. *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). Thus, the issue here is whether Plaintiff's alleged need for medical treatment after being

---

[2] Nor has Plaintiff specifically alleged damage to his tear ducts as one of his injuries.

sprayed with pepper foam, based on the alleged harms of skin discoloration above his eye, a dot on his eye, and blurry vision, was "so obvious that even a lay person would easily recognize" it. *Hunt*, 199 F.3d at 1224. Plaintiff alleges that these injuries "are real, they are serious, and they are permanent." (Aplt. App. at 131.) However, to the extent these alleged harms are even remotely verified by any objective evidence, they are simply not the kind of harms that would obviously mandate treatment to a layperson such as Defendant Gore.

Plaintiff cites a number of cases in an attempt to support his blanket conclusion that a prisoner's eye injury represents a serious medical need. (Response Brief at 11.) These cases, however, are clearly distinguishable on their facts and serve as a reminder of the fact-specific nature of these types of cases. *See Canell v. Multnomah County*, 141 F. Supp. 2d 1046, 1057 (D. Ore. 2001) (cited by Plaintiff) ("severe eye injuries or legal blindness *may* constitute a serious medical need") (emphasis added). For example, some of the cited cases involve diagnosed, pre-existing medical conditions with accompanying documentation regarding the extent and seriousness of the condition. *Koehl v. Dalsheim*, 85 F.3d 86 (2d Cir. 1996) (medical documentation indicated need for specially prescribed eyeglasses to correct severe double vision and loss of depth perception that had resulted from a prior head injury; such visual deficiencies could and had caused Plaintiff to fall or walk into objects and suffer injuries as a result); *Figueroa v. Rose*, 874 F. Supp. 500, 506 (D.R.I. 1994) (pre-existing eye condition, surgery for condition, and prescribed post-operative care created a serious medical need); *Benter v. Peck*, 825 F. Supp. 1411 (S.D. Iowa 1993) (20/400 vision, which falls within the parameters of the legal definition of

"blindness," is a serious medical need); *Jones v. Williams*, 2001 WL 283101, at *2 n.5 (N.D. Tex. 2001) (undisputed that previously diagnosed inflammatory eye condition (uveitis) and possible retina detachment presented a serious medical need).

Several of the other cited cases, while not involving pre-existing conditions, nevertheless present a medical diagnosis of an injury sufficient to constitute a serious medical need. *Jones v. Van Fleit*, 49 Fed. Appx. 626, 628 (7th Cir. 2002) (defendant stipulated that diagnosed partial retinal tear resulting in permanent blurred vision and light sensitivity was serious medical need); *Freeman v. Sheahan*, 1996 WL 18883, at *6 (N.D. Ill. 1996) (plaintiff's eye injury after he bumped his eye on the corner of a railing, including diagnosis of traumatic iritis, hyphema, choroidal detachment, and a vitreous hemorrhage, and experience of temporary vision loss, was a serious medical need). No similar diagnosis, or indeed any medical documentation, is available in this case because Plaintiff, to this day, has failed to provide it to either the District Court or this Court.

The remaining cases cited by Plaintiff are simply not factually comparable as to the obviousness of the severity of the injury in question and thus are not persuasive with regard to whether the alleged harm in this case created a serious medical need. *Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996) (subjective claims of pain for two days resulting from being kicked and beaten by guards, which caused cuts and severe muscular pain, and from being maced, which caused a burning sensation in the eyes and skin, were sufficient to submit to jury whether plaintiffs were in sufficient pain to entitle them to pain medication sooner than they received it); *Davis v. City of Greenville, Miss.*, 974 F. Supp. 884, 885-86 (N.D. Miss. 1997) (defendant stipulated that plaintiff suffered serious

medical need when he could not see as a result of another inmate's pouring a caustic cleaning solution into his eyes); *Davis v. Oklahoma Dep't of Corrections*, 516 F. Supp. 5, 7 (W.D. Okla. 1980) (in context of motion to dismiss, alleged injury of permanent blindness from drinking methyl alcohol was sufficiently serious under *Estelle* test); *Ervin v. Mangum*, 127 F.3d 1099, 1997 WL 664606, at *6 (4th Cir. 1997) (plaintiff's evidence that inmate's punch resulted in fracture to his face and eye socket and caused his right eye to become swollen shut, his left eye swollen almost shut, and his nose to bleed throughout the night, satisfied "serious medical need" standard). There was no ingestion of any sort of poison in this case and no claim of a physical beating or any fractures, nor were there allegations of significant pain once the expected burning sensation had worn off after 45 minutes. (Aplt. App. at 162) (tenderness from swelling and redness, which was alleviated when wet towel placed over the eye, subsided in a few days).

The only case cited by Plaintiff that is remotely factually comparable is the unpublished case of *Boyd v. Bell.* 2002 WL 32349381 (E.D. Va. 2002). In that case, a correctional officer fired a rubber-pellet shotgun at several fighting inmates, hitting plaintiff in the forearm, right shoulder, and under his right eye. After citing two cases involving completely different types of injuries as examples of those that meet the "serious medical need" requirement, the court concluded with no analysis or comparison that the plaintiff alleged a sufficiently serious medical need by claiming that he suffered from blurred vision as the result of being hit by the pellet. *Id.* at *3-4 (citing cases holding that intense pain from an untreated bullet wound and excruciating pain from an untreated broken arm were sufficiently serious). In addition to the lack of analysis, the

court in *Boyd* was reviewing the issue in the context of a motion to dismiss, in which the court presumes a plaintiff's allegations to be true in determining whether the plaintiff is entitled to legal relief. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). The standard of review on summary judgment, however, is not so deferential, and a non-movant plaintiff can no longer rely exclusively on the allegations in the complaint to survive the motion. Although the court still views the facts in the light most favorable to the non-movant, the movant can nevertheless satisfy its initial burden of showing that there is no genuine issue of material fact simply by pointing out the lack of evidentiary and factual support for Plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). As demonstrated below, Defendant Gore has done so in this case.

Even assuming that a visual impairment in the form of blurred vision constitutes a serious medical need, Plaintiff has failed to satisfy his burden on summary judgment by providing evidentiary support for his conclusory allegation that he suffers from such an impairment. A self-diagnosis alone cannot establish that a plaintiff suffers from a condition. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (allegations that prison officials ignored plaintiff's kidney stone ailment "might present a close question if there was any medical evidence to support [plaintiff's] claim that he suffered from this ailment"); *see also Samuels v. Hawkins*, 157 F.3d 557, 558 (8th Cir. 1998) (in Eighth Amendment claim based on excessive use of force, there was no evidence substantiating plaintiff's "elaborate claims of serious injury to his eyes" after officer threw liquid into his cell, some of which splashed into his eyes). Unlike situations in which the harm alleged involves extreme pain, which is "a uniquely subjective experience," *Cooper*, 97

F.3d at 918, a plaintiff alleging that he suffers from a permanent, serious medical condition should be required to provide an actual diagnosis of that condition.

Despite Plaintiff's attempt to distinguish it, *Frohmader v. Wayne*, in which the plaintiff allegedly suffered from claustrophobia and agoraphobia, stands for the same proposition. 958 F.2d 1024 (10th Cir. 1992). In *Frohmader,* the plaintiff failed to create a triable issue of fact as to his medical needs by introducing only "conclusory and self-serving excerpts from his deposition" in support of his alleged afflictions and failing to present "affidavits or depositions of experts, []or any other form of medical or psychological evidence, reflecting a diagnosis of claustrophobia." *Id.* Although the defendant in *Frohmader* had presented deposition testimony from the plaintiff's treating mental health professionals who denied treating him for claustrophobia, that does not change the *Frohmader* court's reliance on the plaintiff's *failure* to adduce evidence in affirming the summary judgment, nor does it affect the standard of review on summary judgment. *Celotex Corp.*, 477 U.S. at 323 (finding no requirement in Rule 56 that the moving party support its motion with evidence negating the opponent's claim and holding that summary judgment should be granted against a nonmoving party who, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Like the plaintiffs in *Kayser* and *Frohmader*, and unlike those in the cases cited by Plaintiff, Plaintiff has failed to adduce any evidence supporting his claim of a serious medical need. This argument does not, as Plaintiff contends, constitute an "attempt [by

Gore] to argue about the sufficiency of the evidence." (Response Brief at 13.) Gore disputes not the evidence the Court must consider, but the legal conclusions to be drawn from that evidence. Nor is Defendant Gore contending that visual impairments can never constitute serious medical needs under the Eighth Amendment. Rather, Gore is simply requesting that this Court hold Plaintiff responsible for presenting sufficient evidence of the only potentially "serious medical need" he may have alleged in order to withstand summary judgment—the claim that he suffers from a visual impairment. *Kayser*, 16 F.3d at 281. The remaining alleged injuries that are arguably supported by "objective evidence," the skin discoloration and dot on Plaintiff's eye, are analogous to the kinds of minor injuries that have been held not to create serious medical needs. *E.g.*, *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists); *Shabazz v. Barnauskas*, 790 F.2d 1536, 1538 (11th Cir. 1986) (sensitive skin condition). Plaintiff has never alleged that either of these symptoms causes him any pain, or even discomfort, as the sensitivity from the redness and swelling subsided within a few days of the incident. (Aplt. App. at 162.) More importantly, these symptoms do not substantiate Plaintiff's claims of a continuing visual impairment.

Finally, and as argued in Appellant's Opening Brief, Plaintiff has failed to provide evidence of any particular treatment that would have alleviated his condition at the time he presented to Gore. Plaintiff makes much of the manufacturer's instructions on the pepper foam, which provide that the contaminated area should be flushed with cool water and include a warning regarding the injuries that may result from failure to follow the

instructions.[3] The warning label, however, cannot constitute evidence of injuries that Plaintiff actually suffered. In addition, Plaintiff ignores the fact that his eyes *were* flushed with cool water shortly after being sprayed, and that any pain or sensitivity was alleviated by placing a wet towel over his eye. (Aplt. App. at 43, 162.) Absent evidence that additional treatment would have helped his condition, Plaintiff cannot demonstrate a serious medical need for such treatment. *See Warren v. State of Mo.*, 995 F.2d 130, 131 (8th Cir. 1993) (plaintiff could not demonstrate a serious medical need for physical therapy without evidence that such therapy was necessary to treat his condition). This is consistent with this Court's statement in *Mata* that, with regard to whether the alleged harm is sufficiently serious, "a prisoner must be careful in selecting what harm to claim" because "the prisoner may not be able to prove that [the alleged harm] was caused by any government actor." 427 F.3d at 753. Although Plaintiff argues that his symptoms were the same as the harm he suffered, (Response Brief at 17 n.5), there is a significant difference between the symptoms displayed to Gore—a claim of blurred vision in one eye and mild skin discoloration a few days after being sprayed with pepper foam—and the harm now alleged by Plaintiff—permanent vision loss and disfigurement. The former is simply not the kind of injury that constitutes a constitutionally protected medical condition, and the latter, while a closer question, requires at least some objective medical evidence, which Plaintiff has been unable to produce.

[3] Blurred vision or other types of vision problems are *not* listed as potential resulting injuries on the warning label.

Because Plaintiff has failed to produce any evidence creating a triable issue of fact as to the objective component of the *Estelle* test, he cannot satisfy his burden of showing that his Eighth Amendment rights were violated, and Gore is entitled to qualified immunity.

## III. GORE IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW REGARDING THE ALLEGED VIOLATION WAS NOT CLEARLY ESTABLISHED AT THE TIME IT OCCURRED.

### A. The District Court failed to analyze the "clearly established" prong of the qualified immunity test.

In the District Court, Defendant Gore argued that he was entitled to summary judgment on Plaintiff's Eighth and Fourteenth Amendment claims both because there was no evidence of a constitutional violation and because Gore was entitled to qualified immunity. (Aplt. App. at 67-70, 204-06.) When the defense of qualified immunity is raised, the plaintiff bears the burden of demonstrating both (1) that the defendant's conduct violated the law, and (2) that the law was clearly established when the alleged violation occurred. *Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994). The District Court concluded that the evidence created a triable fact issue as to whether Defendant Gore was deliberately indifferent to a serious medical need in violation of the Eighth Amendment and denied summary judgment on Plaintiff's inadequate medical care claim against Gore; however, in doing so, the Court failed either to mention or address Defendant Gore's argument that he was entitled to qualified immunity "because it was not clearly established that the plaintiff's symptoms rose to the level of a 'serious medical need' under the Eighth or Fourteenth Amendments." (Aplt. App. at 69.)

Because the District Court impliedly "passed upon" the qualified immunity issue by denying the summary judgment motion on Plaintiff's inadequate medical care claim, this Court can decide it. *Workman*, 32 F.3d at 337. At the very least, however, if the Court determines that there is sufficient evidence of a constitutional violation, the Court should remand the case to the District Court for explicit consideration of Defendant Gore's qualified immunity defense.

**B. At the time of the alleged violation, the law regarding the objective component of the *Estelle* test was not clearly established.**

In response to Defendant Gore's argument in his Opening Brief that the law regarding the objective component of the *Estelle* test was not clearly established in the Tenth Circuit at the time of the alleged violation, Plaintiff again makes sweeping generalizations about prisoners' clear "right to medical care for a serious eye injury." (Response Brief at 16.) Plaintiff then cites the same factually distinguishable cases that he relies on to support his claim that the alleged harm in this case constitutes a serious medical need. (*Id.* at 17-18.) Plaintiff thereby completely misses the point of Gore's argument, which is that the fact-specific nature of inadequate medical care claims renders precedent on the issue of what constitutes a sufficiently serious medical need largely inapplicable to the specific situation confronted by an official, with the exception of the most obvious cases that clearly qualify as serious, *e.g.*, *Mullen v. Smith*, 738 F.2d 317 (8th Cir. 1984) (back and head injuries which prohibited prisoner from walking), or clearly do not. *E.g.*, *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists). Thus, as argued more extensively in Gore's Opening Brief, "the 'more

particularized' law regarding the objective component of the Eighth Amendment inadequate medical care analysis" is not, and perhaps cannot, be clearly established with regard to injuries that could reasonably fall on either side of the "serious medical need" line. (Appellant's Opening Brief at 16, 18-19) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Plaintiff also erroneously dismisses in a footnote Defendant Gore's argument regarding the clarification effected by this Court in *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), with regard to analyzing the objective component of the *Estelle* test. (Response Brief at 17 n.5.) The Court in *Mata* noted that there was confusion with regard to when to make the determination of whether a "serious medical need" exists. 427 F.3d at 753. The Court concluded that the determination should not be based exclusively on the symptoms presented at the time the prison employee has contact with the prisoner; rather, the determination should be based on the prisoner's alleged harm. *Id.* After *Mata*, a prisoner's alleged harm in an Eighth Amendment claim can be framed as "the last untoward event to befall" the prisoner. 427 F.3d at 753. Although the *Mata* Court also recognized the causation problems a prisoner could face and should keep in mind, *Mata* nevertheless significantly expands the scope of an official's potential liability under the Eighth Amendment. Symptoms that may appear relatively minor can turn out to be signs of serious conditions. *See Jones*, 49 Fed. Appx. at 628 (cited by Plaintiff) (defendant agreed that, "in hindsight, [the plaintiff's] injury was serious"). Thus, *Mata* could have a considerable effect on an official's determination of what medical conditions are sufficiently serious to warrant treatment.

Plaintiff's symptoms at the time he presented to Gore, who had been trained on the use of pepper spray and had been sprayed in the eyes with it himself, were minor. A certain degree of short-term pain and sensitivity is expected, and that had subsided in due course. (Aplt. App. at 161-62) (burning effects subsided in 45 minutes; redness and swelling subsided in a few days). Again, the presence of blurred vision and mild skin discoloration several days after being sprayed with pepper foam, combined with the fact that Plaintiff's condition was improving and he was no longer in any pain, is substantially different than the corresponding allegation of permanent vision problems.

Given the recent clarification regarding the "serious medical need" analysis, "the contours of [Plaintiff's] right" at the time Gore denied Plaintiff's request to see a doctor cannot have been "sufficiently clear that a reasonable official would understand that [denying Plaintiff's request] violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Because it was not clearly established at the time of the alleged violation that the objective component of the Eighth Amendment analysis depended on the harm alleged rather than the symptoms displayed, the unlawfulness of Gore's actions in denying Plaintiff medical care based on the symptoms presented cannot have been apparent. Accordingly, Gore is entitled to qualified immunity regardless of whether a violation actually occurred.

## CONCLUSION

For the foregoing reasons, Defendant Gore is entitled to qualified immunity on Plaintiff's claims, and the District Court erred in denying Gore's motion for summary judgment. Accordingly, this Court should reverse the District Court's order and enter

summary judgment for Gore or, in the alternative, remand the case to the District Court to complete the analysis of Gore's qualified immunity defense.

Respectfully submitted: May 8, 2006.

BERG HILL GREENLEAF & RUSCITTI LLP

______________________________
Josh A. Marks, Esq.
Melanie B. Lewis, Esq.
1712 Pearl Street
Boulder, CO 80302
Phone: (303) 402-1600
Fax: (303) 402-1601

*Attorneys for Appellant Gore*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2006, a true and correct copy of the foregoing **REPLY BRIEF OF DEFENDANT-APPELLANT MONTE GORE** was delivered via U.S. Mail, postage pre-paid, as well as e-mail to the following:

Michael S. Freeman
Jacy T. Jasmer
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
mfreeman@faegre.com

Robert M. Liechty
Cross & Liechty, P.C.
400 S. Colorado Blvd., Suite 900
Denver, CO 80246
Rliechty@crossliechty.com

Kathryn Miller
Miller & Steiert, PC
1901 W. Littleton Blvd.
Littleton, CO 80120
katym@m-s-lawyers.com

__________________________________
Julie D. Bozeman