UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| ROBERT HARRIS<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>MONTE GORE,<br><br>    Defendant-Appellant,<br><br>and<br><br>SCOTT TEETSEL,<br><br>    Defendant. | No. 05-1225 |

OPENING BRIEF OF DEFENDANT-APPELLANT MONTE GORE

On Appeal from the United States District Court for the District of Colorado, Civil Action No. 98-K-2501, the Honorable John L. Kane

February 8, 2006

JOSH A. MARKS, Esq.
MELANIE BAILEY LEWIS, Esq.
of BERG HILL GREENLEAF &
RUSCITTI LLP
1712 Pearl Street

ORAL ARGUMENT
IS REQUESTED

Boulder, Colorado 80302
(303) 402-1600

*Attorneys for Defendant-Appellant*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

PRIOR OR RELATED APPEALS..................................................................................... 1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION .......................... 1

STATEMENT OF THE ISSUES......................................................................................... 2

STATEMENT OF THE CASE............................................................................................ 2

     1.     FACTUAL BACKGROUND ................................................................. 2

     2.     PROCEDURAL BACKGROUND.......................................................... 5

SUMMARY OF ARGUMENT .......................................................................................... 6

STANDARD OF REVIEW ............................................................................................... 6

ARGUMENT .................................................................................................................. 7

     I.     TO DEFEAT DEFENDANT'S QUALIFIED IMMUNITY DEFENSE, THE PLAINTIFF HAS THE BURDEN TO SHOW BOTH A VIOLATION OF LAW AND THAT THE LAW WAS CLEARLY ESTABLISHED AT THE TIME OF THE VIOLATION.............................................................................................. 7

     II.    THERE IS NO EVIDENCE THAT DEFENDANT GORE VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHT ................................................. 8

          A.     Standard Governing Eighth Amendment Right to Adequate Medical Care ............................................................................................. 8

          B.     Plaintiff's Claims Do Not Rise to the Level of a "Serious Medical Need" ............................................................................................ 9

     III.   AT THE TIME THE ALLEGED VIOLATION OCCURRED, THE LAW WAS NOT CLEARLY ESTABLISHED AS TO WHETHER PLAINTIFF'S SYMPTOMS ROSE TO THE LEVEL OF A SERIOUS MEDICAL NEED .................................................................... 15

CONCLUSION.............................................................................................................. 20

CERTIFICATE OF SERVICE ......................................................................................... 22

TABLE OF AUTHORITIES

Cases

Anderson v. Creighton, 483 U.S. 635, 638 (1987) .................................... 11, 15, 17

Borrelli v. Askey, 582 F. Supp. 512, 513 (E.D.Pa), *aff'd*, 751 F.2d 373 (3d Cir. 1984)..................................................................................................12

Brosseau v. Haugen, 543 U.S. 194, 198 (2004)................................... 15, 16, 17, 19

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)...................................7

El'Amin v. Pearce, 750 F.2d 829, 832 (10th Cir. 1984) .........................…......18

Estelle v. Gamble, 429 U.S. 97, 104 (1976) .......................................... 9, 14, 18, 19

Farmer v. Brennan, 511 U.S. 825, 834 (1994)...........................................9

Frohmader v. Wayne, 958 F.2d 1024, 1028-29 (10th Cir. 1992) .....................10, 11

Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001) ..................................10, 13

Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991) ...............................................................13

Green v. Carlson, 581 F.2d 669 (7th Cir. 1978) ........................................13

Hill v. DeKalb Reg. Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) ..................................................................................................13

Hope v. Pelzer, 536 U.S. 730 (2002)...................................................13

Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) .....................................9, 12

Johnson v. Fankell, 520 U.S. 911, 915 (1997)...........................................2

Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994) .............................................11

Lopez v. LeMaster, 172 F.3d 756, 759 n.2 (10th Cir. 1999)....................................9

Maldonado v. City of Altus, 2005 WL 52805, at *18 (10th Cir. Jan 11, 2006).......17

Martin v. Board of county Comm'rs of county of Pueblo, 909 F.2d 402, 406
(10th Cir. 1990) ........................................................................................18

Martin v. Nannie & Newborns, Inc., 3 F.3d 1410, 1414 (10th Cir. 1993),
*aff'd after remand*, 54 F.3d 788 (1995)....................................................7

Mata v. Saiz, 427 F.3d 475 (10th Cir. 2005) ....................................................16, 17

Mata v. Saiz, 427 F.3d 745, 753 (10th Cir. 2005)................................ 10, 11, 12, 14

Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992)..........17

Miller v. Glanz, 948 F.2d 1562, 1564, 1569 (10th Cir. 1991).................................18

Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d
326, 347 (3d Cir. 1987, *cert. denied*, 486 U.S. 1006 (1988).................................13

Mullen v. Smith, 738 F.2d 317 (8th Cir. 1984) ................................................12, 19

Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001).................13, 14

Olsen v. Layton Hills Mall, 312 F.3d 1304, 1313 (10th Cir. 2002) ......................8, 9

Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)................................................10

Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001 ....................................10

Perez v. Ellington, 421 F.3d 1128, 1131 (10th Cir. 2005) ................................2, 6, 8

Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 811 (10th Cir. 1999) .........10

Ramos v. Lamm, 639 F.2d 559, 575 (10th. Cir. 1980) .............................................9

Reed v. Dunham, 893 F.2d 285, 287 (10th Cir. 1990)..............................................18

Riddle v. Mondragon, 83 F.3d 1197, 1203 (10th Cir. 1996)...................................9

Saucier v. Katz, 533 U.S. 194, 206 (2001) ..............................................................19

Samuels v. Hawkins, 157 F.3d 557, 558 (8th Cir. 1998) ........................................11

Shabazz v. Barnauskas, 790 F.2d 1536, 1538 (11th Cir. 1986) .............................12

Simkins v. Bruce, 406 F.3d 1239, 1241 (10th Cir. 2005) .......................................15

Starbeck v. Linn County Jail, 871 F. Supp. 1129, 1141 (N.D. Iowa 1991)............13

Warren v. State of Mo., 995 F.2d 130, 131 (8th Cir. 1993) ....................................14

Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990)....................................12, 18

Workman v. Jordan, 32 F.3d 475, 479 (10th Cir. 1994) ..........................................7

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1291.................................................................................................. 1, 2

28 U.S.C. § 1331..................................................................................................... 1

42 U.S.C. § 1983................................................................................................. 1, 5

Fed. R. Civ. P 56....................................................................................................7, 11

## PRIOR OR RELATED APPEALS

Counsel is not aware of any prior or related appeals.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Plaintiff-Appellee Robert Harris ("Plaintiff") filed a Prisoner's Civil Rights Complaint pursuant to 42 U.S.C. § 1983 against Summit County, its sheriff, its jail captain (Monte Gore) and a deputy (Scott Teetsel). The District Court exercised jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

The District Court granted in part and denied in part Defendants Summit County, Joe Morales, and Monte Gore's Motion for Summary Judgment on April 6, 2005. Defendant-Appellant Gore filed his timely Notice of Appeal on May 6, 2005. The District Court also denied Defendant Scott Teetsel's Motion for Summary Judgment on April 6, 2005. Defendant Teetsel has not appealed that order.

As discussed fully in Appellant's Response to Plaintiff's Motion to Dismiss Interlocutory Appeal for Lack of Jurisdiction, this Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1291. The District Court denied Defendant Gore's summary judgment motion on Plaintiff's § 1983 Eighth Amendment medical treatment claim. Although the District Court did not directly address Gore's qualified immunity defense, by denying Gore's motion for summary judgment the District Court implicitly held he was not entitled to qualified immunity. An adverse district court

decision raising a legal question concerning a defendant's entitlement to qualified immunity may be appealed on an interlocutory basis. *See Johnson v. Fankell*, 520 U.S. 911, 915 (1997) (stating "a Federal District Court order rejecting a qualified immunity defense on the ground that the defendant's actions—if proven—would have violated clearly established law may be appealed immediately as a 'final decision' within the meaning of the general federal appellate jurisdiction statute, 28 U.S.C. § 1291"); *Perez v. Ellington*, 421 F.3d 1128, 1131 (10th Cir. 2005) ("Generally, we have jurisdiction to review purely legal questions that arise from the denial of qualified immunity.").

## STATEMENT OF THE ISSUES

I.     WHETHER DEFENDANT COMMITTED AN EIGHTH AMENDMENT VIOLATION BY ALLEGEDLY DENYING MEDICAL CARE TO PLAINTIFF EVEN THOUGH PLAINTIFF'S COMPLAINT OF BLURRED VISION AND EYE DISCOLORATION DID NOT RISE TO THE LEVEL OF A SERIOUS MEDICAL NEED AS A MATTER OF LAW.

II.    WHETHER IT WAS CLEARLY ESTABLISHED AT THE TIME OF THE ALLEGED VIOLATION THAT PLAINTIFF'S CLAIM OF BLURRED VISION AND EYE DISCOLORATION WAS A SERIOUS MEDICAL NEED REQUIRING MEDICAL ATTENTION UNDER THE EIGHTH AMENDMENT.

## STATEMENT OF THE CASE

### A.     Factual Background[1]

This case arises out of Plaintiff's treatment while he was an inmate at Summit County jail. Plaintiff was involved in an altercation with Deputy Scott Teetsel, who

---

[1] In order to properly posture the appeal from the denial of his Motion for Summary Judgment, Defendant Gore assumes only for purposes of this appeal that the following facts are undisputed. In addition, given that Defendant Gore is the only one of the Defendants appealing the District Court's order, Defendant Gore includes only the facts that are relevant to his appeal.

sprayed pepper foam at Plaintiff.    Plaintiff claims that Defendant Gore, who was
Teetsel's captain in the jail, violated plaintiff's Eighth Amendment rights in failing to
provide medical care after he was sprayed in late June of 1998.    Thus, the facts
surrounding the altercation itself and the circumstances leading up to Plaintiff's being
sprayed are not relevant to this appeal, but they are set out at length in Deputy Teetsel's
Brief in Support of his Motion for Summary Judgment.  (*See* Aplt. App. at 25-28).

After the pepper foam was deployed, Plaintiff was taken to the booking desk and
then placed in a shower.  (Aplt. App. at 41).  It took about 10 to 15 seconds to take
Plaintiff to the booking desk.  (*Id.*).  The water was initially warm, but it then became hot.
(Aplt. App. at 42).  When Plaintiff told Deputy Teetsel that the water was becoming hot,
Deputy Teetsel took Plaintiff out of the shower, and also sprayed him with a counter-
reactant.  (*Id.*).  Next, a trustee poured cold water over Plaintiff's head.  (Aplt. App. at
43).  Thereafter, Plaintiff was put into an isolation cell where he rinsed his eyes in a sink
of cold water.  (*Id.*).  After 45 to 60 minutes, the burning effect of the pepper foam had
stopped.  (*Id.*).

Defendant Gore did not participate in, nor was he present for, Deputy Teetsel's
use of pepper spray on Plaintiff or the decontamination process following the incident.
(*See* Aplt. App. at 83).  After the incident, however, Plaintiff sent requests for medical
treatment to Gore.  (*See* Aplt. App. at 74).  Plaintiff claims that he met with Gore one
week after the incident and with Captain Gore and Sheriff Morales approximately ten

days after the incident requesting medical treatment.  (*See* Aplt. App. at 76-79).  Plaintiff claims he communicated he was having problems with his right eye in terms of blurred vision, discoloration above the eye and a dot in his eye.  (*See id.*).  Plaintiff received no medical attention in response to these alleged requests.  (Aplt. App. at 78).

Following the pepper spray incident, Sheriff Morales had an investigation conducted regarding the underlying incident.  (*See* Aplt. App. at 30-32).  As a result of the investigation, Deputy Teetsel was counseled for attempting to deal with inmate Harris without assistance.  (*See* Aplt. App. at 96-97).

At the time of the incident, the Summit County Sheriff's Department had a formal written policy regarding the use of pepper spray.  (*See* Aplt. App. at 99-100).  Under the policy, the proper use of pepper spray is permitted when an inmate implies or threatens the use of force or resistance against an officer.  (*Id.* at 100).  In addition, a deputy must have semi-annual certified training on the use of pepper or OC spray, in which they are taught how to decontaminate a subject who has been sprayed.  (*See* Aplt. App. at 102, 107).  The decontamination process consists of providing cool water to the area.  (*Id.* at 107).  It is within the officer's discretion to determine whether an inmate needs to be seen by medical personnel.  (*See* Aplt. App. at 88-89).

During their training, the officers themselves were sprayed with pepper spray. (*See* Aplt. App. at 48).  In Deputy Teetsel's case, the effect of the pepper spray on him was similar to the effect on plaintiff: he could open his eyes in approximately 40 minutes,

although his face still hurt.  (*See* Aplt. App. at 48-49).  In Gore's case, the effect of the

pepper spray lasted 2 to 3 hours.  (Aplt. App. at 58).  In both of the officers' cases, they

rinsed in a shower, as was done with plaintiff.  (Aplt. App. at 48, 58).

Despite his claim of injury in this case, Plaintiff has failed to provide any medical

or ophthalmologic evidence of any eye injury.

**B.    Procedural Background**

In his Second Amended Complaint,[2] Plaintiff alleged various civil rights

violations against Summit County, Sheriff Morales in his individual and official capacity,

Captain Gore in his individual and official capacity, and Deputy Teetsel in his individual

and official capacity.  After the District Court granted a Stipulated Motion to Dismiss

Claims in Part Without Prejudice, the only claims remaining against the defendants were

42 U.S.C. § 1983 claims based on an Eighth Amendment violation for inadequate

medical care and a Fourteenth Amendment due process violation for excessive force.

(*See* Aplt. App. at 195).

Defendants Summit County, Morales, and Gore filed a motion for summary

judgment on all claims against them.  Defendant Teetsel filed a separate motion for

summary judgment.  The District Court granted the motions for summary judgment

except as to the excessive force claim against Teetsel and the inadequate medical care

claim against Gore and Teetsel.  (*See* Aplt. App. at 214-20).  Defendant Teetsel did not

---

[2] As the Second Amended Complaint is the active complaint, which was filed after the District Court appointed counsel for Plaintiff, Defendant Gore will not discuss the procedural history predating the filing of the Second Amended Complaint.

appeal the District Court's order.  Defendant Gore filed this interlocutory appeal of the District Court's order denying him summary judgment on Plaintiff's inadequate medical care claim.  Accordingly, the only issue remaining in this appeal is whether Defendant Gore is entitled to qualified immunity on plaintiff's Eighth Amendment inadequate medical care claim such that the District Court erred in denying Gore's motion for summary judgment.

## SUMMARY OF ARGUMENT

The District Court erred in denying summary judgment for Gore, effectively holding that Gore was not entitled to qualified immunity on Plaintiff's inadequate medical care claim.  Gore is entitled to qualified immunity unless his conduct violated the law and the law was clearly established when the violation occurred.  A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment; however, Plaintiff has not shown that his condition rose to the level of a "serious medical need."  In addition, it was not clearly established at the time Gore allegedly withheld medical care from Plaintiff that Plaintiff's condition rose to the level of a serious medical need.

## STANDARD OF REVIEW

This Court reviews *de novo* the denial of a motion for summary judgment raising qualified immunity questions.  *Perez v. Ellington*, 421 F.3d 1128, 1131 (10th Cir. 2005).  Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party generally bears the initial burden of showing that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This does not require the movant to disprove the plaintiff's claims, but rather only requires the movant to point out their lack of evidentiary and factual support. *Id.* at 324. Once the movant meets its burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue of material fact for trial. *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993), *aff'd after remand*, 54 F.3d 788 (1995). The non-moving party cannot merely rest on the allegations in the pleadings to meet its burden. *Id.*; *Celotex*, 477 U.S. at 324. If the non-movant fails to meet its burden, then the moving party is entitled to judgment.

## ARGUMENT

I.    **TO DEFEAT DEFENDANT'S QUALIFIED IMMUNITY DEFENSE, THE PLAINTIFF HAS THE BURDEN TO SHOW BOTH A VIOLATION OF LAW AND THAT THE LAW WAS CLEARLY ESTABLISHED AT THE TIME OF THE VIOLATION.**

When the defendant in a section 1983 case raises qualified immunity as a defense, the burden shifts to the plaintiff to show "both facts and law to establish that the defendant is not entitled to qualified immunity." *Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994). To meet this burden, the plaintiff must show that (1) the official violated

a constitutional or statutory right, and (2) the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313 (10th Cir. 2002). The court views the facts "in the light most favorable to the [plaintiff]" to determine whether the plaintiff's version of the facts amounts to the violation of a clearly established constitutional right. *Id.*; *Perez*, 421 F.3d at 1131. If the plaintiff does not satisfy either prong of this inquiry, the court must grant the defendant qualified immunity. *Olsen*, 312 F.3d at 1313. As discussed below, even under Plaintiff's version of the facts in this case, Plaintiff has failed to show either the violation of a right or that the right was clearly established. Because Plaintiff has not met his burden, Gore is entitled to summary judgment.

## II.    THERE IS NO EVIDENCE THAT DEFENDANT GORE VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHTS.

The District Court found that the Plaintiff presented sufficient evidence of an Eighth Amendment violation to withstand Gore's motion for summary judgment. This brief does not challenge the district court's factual findings; rather, Gore contends in this Court that the evidence the district court relied upon fails to give rise to an Eighth Amendment violation as a matter of law.

### A.    Standard Governing Eighth Amendment Right to Adequate Medical Care.

In an attempt to show that a constitutional violation occurred, Plaintiff alleges that Gore violated Plaintiff's constitutional right to adequate medical care. Prison officials

violate the Eighth Amendment's Cruel and Unusual Punishment Clause when their conduct demonstrates that they were deliberately indifferent to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, the court applies an analysis identical to that applied in Eighth Amendment cases in determining whether a detainee's rights were violated. *Olsen*, 312 F.3d at 1315 (citing *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)). The *Estelle* test has two components: (1) an objective component involving whether the prisoner's need was sufficiently serious, and (2) a subjective component involving whether the particular prison official's state of mind was sufficiently culpable to amount to deliberate indifference to the prisoner's medical condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996).

**B.    Plaintiff's Claims Do Not Rise to the Level of a "Serious Medical Need."**

The objective component of the *Estelle* test requires evidence that the medical need be "sufficiently serious"—that is, "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). A recent Tenth Circuit Court of Appeals case has expanded on the objective prong and held that whether a medical need is sufficiently serious depends on the harm alleged by the

plaintiff rather than the symptoms displayed to the prison official at the time medical treatment was denied or delayed. *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

A "delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm.'" *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). The Tenth Circuit has held that "the substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* A disagreement regarding the appropriate course of medical care, however, does not violate the Eighth Amendment. *See Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[A] difference of opinion does not support a claim of cruel and unusual punishment.").

Plaintiff claims that he suffers from skin discoloration above his right eye, a spot on his right eye, and blurred vision in one eye. According to Plaintiff, his injuries "are real, they are serious and they are permanent." (Aplt. App. at 131). To date, however, Harris has not produced any medical or ophthalmologic testimony to support his allegation of a permanent eye injury. Harris's own testimony, without any accompanying medical support, is insufficient to demonstrate substantial harm or a serious injury. *See Frohmader v. Wayne*, 958 F.2d 1024, 1028-29 (10th Cir. 1992) (plaintiff's unsupported assertion that he suffered from claustrophobia and agoraphobia did not raise a triable issue of fact). The plaintiff suggested before the District Court that "[c]ommon sense

dictates that if someone suffers an injury to his or her eye that it should be deemed 'serious.'"  (Aplt. App. at 131).  Federal Rule of Civil Procedure 56 and the qualified immunity framework, however, require that a party to a lawsuit alleging he has a serious medical need that went untreated and resulted in permanent injury meet the burden of demonstrating this element by producing some form of a medical diagnosis of his injury. *See Frohmader*, 958 F.2d at 1028-29; *see also Mata*, 427 F.3d at 753.

As noted by this Court in *Mata*, "a prisoner must be careful in selecting what harm to claim."  427 F.3d at 753.  Allowing a prisoner to satisfy the objective prong of the Eighth Amendment analysis by making bare, unsupported allegations of a self-diagnosed serious medical condition flies in the face of the purpose of the qualified immunity defense, which is to shield officers from liability for performing discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  If the harm alleged by the prisoner in an inadequate medical care claim is the ultimate medical diagnosis rather than the symptoms presented to the official, there should be an actual diagnosis to substantiate that harm where, as here, the harm would not be readily apparent.  *See Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (available medical evidence did not support plaintiff's allegation that he suffered from kidney stones, and plaintiff's self-diagnosis alone could not establish that he suffered from that ailment); *see also Samuels v. Hawkins*, 157 F.3d 557, 558 (8th Cir. 1998) (in Eighth Amendment claim

11

based on excessive use of force, there was no evidence substantiating plaintiff's "elaborate claims of serious injury to his eyes" after officer threw liquid into his cell, some of which splashed into his eyes).

The Plaintiff, however, has failed to produce any objective, corroborating evidence of a serious medical condition. The only evidence of injury Plaintiff points to is his own testimony regarding the discoloration above his eye, the dot in his eye, and blurry vision. (*See* Aplt. App. at 132). Plaintiff testified that the burning effects of the pepper foam dissipated after about 45 minutes and that the redness subsided in a few days. (*See* Aplt. App. at 43, 162). Thus, these symptoms were not present at the time Plaintiff complained to Captain Gore. Plaintiff's concerns about vision loss do not amount to objective evidence of actual vision loss. The discoloration and dot, which are not alleged to cause any pain or severe visual impairment, are clearly analogous to the kinds of conditions that the courts have deemed were not serious medical needs. *E.g.*, *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists); *Shabazz v. Barnauskas*, 790 F.2d 1536, 1538 (11th Cir. 1986) (sensitive skin condition); *Borrelli v. Askey*, 582 F. Supp. 512, 513 (E.D. Pa.), *aff'd*, 751 F.2d 373 (3d Cir. 1984) (slight visual impairment, mild headaches and mild tension). On the other hand, Plaintiff's complained-of conditions are decidedly distinguishable from those the courts have classified as serious medical needs. *E.g.*, *Mata*, 427 F.3d at 753 (heart damage or severe chest pain); *Hunt*, 199 F.3d at 1223 (diabetes and hypertension); *Mullen v. Smith*, 738

F.2d 317 (8th Cir. 1984) (back and head injuries which prohibited prisoner from walking); *Green v. Carlson*, 581 F.2d 669 (7th Cir. 1978) (severe asthmatic attack which led to prisoner's death); *Starbeck v. Linn County Jail*, 871 F. Supp. 1129, 1141 (N.D. Iowa 1991) (noting that courts often classify as "serious" a prisoner's medical needs requiring surgery).

In addition, Plaintiff's claim regarding Gore's failure to grant Plaintiff's request for treatment is analogous to cases involving a delay in medical care. Several other circuits have evaluated the seriousness of a deprivation of care "by examining the effect of the delay in treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (citing *Hill v. DeKalb Reg. Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogated in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002), *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991), and *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988)). In accordance with this "practical and logical approach," these circuits held: "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to proceed." *Id.* (quoting *Hill*, 40 F.3d at 1188). This is consistent with Tenth Circuit authority requiring that a delay in medical care result in substantial harm to constitute an Eighth Amendment violation. *Garrett*, 254 F.3d at 950.

Plaintiff certainly could have supplemented the record with medical evidence at any time prior to the District Court's issuing its summary judgment ruling on April 6, 2005; however, he has failed to introduce such evidence not just of the detrimental effect of the delay, but of any injury to his eye at all.  Because there is no evidence that a delay resulted in substantial harm, Plaintiff cannot show that the alleged deprivation is sufficiently serious to satisfy the objective component of the inadequate medical care analysis.  *See Napier*, 238 F.3d at 743.

Finally, because Plaintiff has no objective medical evidence of any eye injury, he did not provide evidence of any particular treatment that would have alleviated his symptoms at the time he presented to Gore.  His eyes had been flushed with cool water, as indicated by the pepper foam instructions.  Absent evidence that additional treatment would have helped his condition, Plaintiff cannot demonstrate a serious medical need for such treatment.  *See Warren v. State of Mo.*, 995 F.2d 130, 131 (8th Cir. 1993) (plaintiff could not demonstrate a serious medical need for physical therapy without evidence that such therapy was necessary to treat his condition).

Even under the new *Mata* standard of determining whether a plaintiff's medical needs are sufficiently serious, and even viewing the evidence in the light most favorable to the plaintiff, Plaintiff in this case has failed to produce any evidence satisfying the objective component of the *Estelle* test.  Accordingly, the plaintiff cannot show that his Eighth Amendment rights were violated, and Gore is entitled to qualified immunity.

### III.  AT THE TIME THE ALLEGED VIOLATION OCCURRED, THE LAW WAS NOT CLEARLY ESTABLISHED AS TO WHETHER PLAINTIFF'S SYMPTOMS ROSE TO THE LEVEL OF A SERIOUS MEDICAL NEED.

To withstand summary judgment on qualified immunity grounds, in addition to proving that an official violated the law, the plaintiff must show that the law was clearly established at the time the violation occurred.  *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).  Thus, qualified immunity protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  In *Anderson v. Creighton*, the Supreme Court expanded on the "clearly established" standard:

> The operation of this standard . . . depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. . . .  [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

483 U.S. 635, 640 (1987) (citations omitted); *see also Brosseau*, 543 U.S. at 198-99 (quoting *Anderson* and holding that the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted") (citation omitted).

15

Given the above standard, it is not enough for Plaintiff to show that he has a clearly established Eighth Amendment right to adequate medical care.  Clearly, the generalized right to adequate medical care existed at the time of the incident.  What was not clearly established at the time of the alleged violation, however, was the "more particularized" law regarding the objective component of the Eighth Amendment inadequate medical care analysis—whether the plaintiff presented with a serious medical need.  *See Brosseau*, 543 U.S. at 198-99.

As discussed above, this Court recently issued *Mata v. Saiz*, 427 F.3d 475 (10th Cir. 2005), which clarified the analysis in the Tenth Circuit regarding whether a medical need is sufficiently serious.  The Court recognized the oft-used definition of "serious medical need" as "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Id.* at 753 (citing cases).  The Court went on, however, to discuss the "problem with this formulation," which "is that it can be read to say that the determination whether a medical need is sufficiently serious is to be made exclusively by the symptoms presented at the time the prison employee has contact with the prisoner." *Id.*  The Court disagreed with such a reading, concluding that the symptoms displayed to the prison official are relevant only to the subjective component of the Eighth Amendment analysis; that is, the determination of whether the official acted with deliberate indifference.  *Id.*  With regard to the objective component of the analysis, the

Court concluded, the question is whether the *alleged harm* is sufficiently serious, rather than the symptoms displayed to the official.  *Id.*

Given the recent clarification regarding what constitutes a serious medical need, "the contours of [Plaintiff's] right" at the time Gore denied Plaintiff's request to see a doctor cannot have been "sufficiently clear that a reasonable official would understand that [denying Plaintiff's request] violates that right."  *Anderson*, 483 U.S. at 640.  There is a significant difference between the symptoms displayed to Gore—blurred vision in one eye and mild skin discoloration—and the harm now alleged by Plaintiff—permanent vision loss and disfigurement.  Because it was not clearly established at the time of the alleged violation that the objective component of the Eighth Amendment analysis depended on the harm alleged rather than the symptoms displayed, the unlawfulness of Gore's actions in denying Plaintiff medical care based on the symptoms presented cannot have been apparent.

Even leaving aside that *Mata* sets out a new standard, the law regarding what constitutes a serious medical need was not clearly established in June 1998, the time of the alleged violation in this case.  For the law to be clearly established in accordance with the standards set out in *Anderson* and *Brosseau*, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Maldonado v. City of Altus*, 2005 WL 52805, at *18 (10th Cir. Jan. 11, 2006) (citing *Medina v. City & County of*

17

*Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).  There is no Supreme Court decision on point elaborating on the determination of what conditions constitute "serious medical needs" under *Estelle*.  The Tenth Circuit authority on this issue prior to June of 1998 is extremely limited, though it does indicate that there are certain conditions that clearly cross the line and qualify as "serious" under the Eighth Amendment.  *E.g.*, *Martin v. Board of County Comm'rs of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990) (plaintiff's allegations that she had been in a serious accident resulting in a fractured neck and risk of paralysis implicated "serious medical concerns"); *Reed v. Dunham*, 893 F.2d 285, 287 (10th Cir. 1990) (allegations that officers delayed treatment of "apparently serious stab wounds" stated inadequate medical care claim).  On the other hand, there are conditions that clearly do not qualify as serious.  *El'Amin v. Pearce*, 750 F.2d 829, 832 (10th Cir. 1984) (complaints of sore wrists, neck, back and shoulders, and abrasions on wrists and left and right scapular area do "not involve the kind of immediate serious medical needs that would suggest a more critical examination of the . . . defendant's motives").

In many cases, however, the particular facts presented make it difficult for officers to make the determination of whether a prisoner has a serious medical need, and they must make a judgment call based on symptoms that could reasonably be held to fall on either side of the line.  *See, e.g.*, *Miller v. Glanz*, 948 F.2d 1562, 1564, 1569 (10th Cir. 1991) (injuries sustained from alleged assault in which plaintiff was beaten, choked,

kicked, stomped, and forced to remain handcuffed in awkward position for almost two hours "*may* be sufficiently 'serious' to meet the objective component" of the *Estelle* test) (emphasis added). Given the fact-specific nature of these cases, what little precedent exists is of limited use. Similarly, authority from other jurisdictions is of little help other than to identify medical conditions that clearly qualify as serious, *e.g.*, *Mullen v. Smith*, 738 F.2d 317 (8th Cir. 1984) (back and head injuries which prohibited prisoner from walking), or clearly do not. *E.g.*, *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists).

The Supreme Court recognized the existence of this difficult middle ground in the context of Eighth Amendment excessive force claims. *Brosseau*, 543 U.S. at 201. The issue in *Brosseau* was whether a police officer engaged in excessive force when he shot the plaintiff in the back as he attempted to flee from law enforcement authorities in his vehicle. *Id.* at 194. The Court noted that "this area is one in which the result depends very much on the facts of each case. . . . They [the cases cited by the parties] do suggest that [the plaintiff's] actions fell in the 'hazy border between excessive and acceptable force.'" *Id.* at 201 (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). Similar to cases involving claims of excessive force, the fact-specific nature of claims of inadequate medical care often makes it difficult for courts, let alone for prison officials who must make on-the-spot decisions, to assess the parameters of the "serious medical need" component of a plaintiff's Eighth Amendment right. Assuming that this Court accepts

Plaintiff's self-diagnosis of permanent vision loss as a serious medical need, that condition also fell into the undefined border between a serious medical need and a constitutionally unprotected medical condition. Considering the state of the law, the instant case is not the kind of clear-cut scenario in which Gore could have concluded that Harris's condition gave rise to a serious medical need. Accordingly, in all but the most obvious cases, the law regarding what constitutes a serious medical need is not, and perhaps cannot, be clearly established.

Because the law was not clearly established at the time of the alleged violation, Gore is entitled to qualified immunity regardless of whether a violation actually occurred.

## CONCLUSION

Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. The plaintiff bears the burden of overcoming a qualified immunity defense, and the Plaintiff in this case has failed to demonstrate that Gore violated the law, knowingly or otherwise. There is no evidence either that Gore violated Plaintiff's Eighth Amendment right to adequate medical care or that the law regarding the objective component of an Eighth Amendment violation was clearly established at the time of the alleged violation. Accordingly, Defendant Gore is entitled to qualified immunity on Plaintiff's claims, and the District Court erred in denying Gore's motion for summary judgment. This Court should remand this matter back to the District Court with directions to grant summary judgment for Defendant Gore.

Respectfully submitted:  <u>February 8, 2006</u>.


BERG HILL GREENLEAF & RUSCITTI LLP


_____
Josh A. Marks, Esq.
Melanie B. Lewis, Esq.
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601

*Attorneys for Appellant Gore*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2006, a true and correct copy of the foregoing **OPENING BRIEF OF DEFENDANT-APPELLANT MONTE GORE** was delivered via U.S. Mail, postage pre-paid,  as well as e-mail to the following:

Michael S. Freeman
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
mfreeman@faegre.com

Robert M. Liechty
Cross & Liechty, P.C.
400 S. Colorado Blvd., Suite 900
Denver, CO 80246
Rliechty@crossliechty.com

Kathryn Miller
Miller & Steiert, PC
1901 W. Littleton Blvd.
Littleton, CO  80120
katym@m-s-lawyers.com

_____
Julie D. Bozeman